J. C. MORGAN *v.* VILLAGE OF STOWE.

February Term, 1918.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed May 16, 1918.

*Negligence —Municipal Corporations —Liability —Governmental Duties—Hydrants—Water Systems—Demurrer.*

The liability of a municipality for negligence in the construction and maintenance of water systems, lighting plants and the like, which are for its private advantage and emolument, is that of a natural person; and it is liable for the negligence of its duly authorized agent in relation thereto, by which injury is done to another, without the fault of the latter.

A municipality is exempt from liability when injury results from the negligent performance of a governmental duty by one authorized to perform it, though the expense of the performance is borne by the municipality.

On demurrer, the facts set out in the declaration are taken to be true.

Where the acts alleged to have been done by the defendant village in the construction of a fire department and location of a hydrant, could not have been done without some kind of an organized system, it will be presumed that they were done under its charter.

A hydrant connected with a water main, and installed in a village street for purposes of fire protection under authority of the village charter, is not a part of the water system of the village, constructed for its benefit or emolument, but is set apart for the exclusive benefit of the public.

It is not necessary for an act to be performed by any particular officer to give it a public or governmental character, but it is enough if the act is performed by one having legal authority so to do; and while performing it he is, by virtue thereof, a public officer.

Where, in an action against a municipality to recover for damages caused by the negligent location of a hydrant, it does not appear who located the hydrant, it will be assumed to have been located by some one having legal authority to do so.

Hydrants and apparatus for the extinguishment of fires in a municipality are in their nature public or governmental property, and their location a public or governmental act; and no action will lie against the municipality for negligence in their use and maintenance.

The action of village trustees in deliberating and adjudging upon a plan of location of hydrants for fire protection is in its nature judicial, and no action lies for errors of judgment or want of foresight therein.

TORT. Heard on demurrer to the complaint at the December Term, 1917, Lamoille County, *Stanton, J.,* presiding. *Pro forma* ruling, sustaining the demurrer and adjudging the complaint insufficient. Plaintiff excepted.

The complaint alleges that the defendant village owned and operated a system of water works for the purpose of supplying the inhabitants thereof with water for domestic purposes, and for use in the protection of the property of said inhabitants from loss and damage by fire, and that, by its servants and agents, the defendant had placed certain hydrants in its streets for use in the protection of the property of the inhabitants from loss and damage by fire; that the defendant negligently placed and installed a hydrant so close to the traveled track of the highway in one of its streets as to endanger the life and property of persons who had occasion to use the street; that while the plaintiff was driving along the street, in a careful and prudent manner, his wagon was drawn upon and against the hydrant and he was thrown out and suffered the injuries complained of.

The ground of demurrer assigned was that the installation of the hydrant at the place and in the manner described, being for the purpose of protection of the property of the inhabitants against fire, was such a governmental act and purpose for the public benefit and protection as would not render the defendant liable, and that such act and purpose were not private in their nature solely for the corporate benefit of the defendant.

*M. P. Maurice, R. W. Hulburd* and *T. C. Cheney* for plaintiff.

A municipal corporation, in the construction of water systems, drains, sewers and lighting plants, acts in its private and corporate capacity and is liable for the negligence of its officers and agents to persons who suffer damage thereby. Dillon, Municipal Corporations, sec. 1670; *Hourigan* v. *Norwich*, 77 Conn. 358, 59 Atl. 487; *Roberts* v. *St. Mary's*, 78 Kan. 707; *Augusta* v. *Neecly*, 113 Ga. 64; *Henderson* v. *Young*, 119 Ky. 224; *Lynch* v. *Springfield*, 174 Mass. 430; *St. Germain* v. *Fall River*, 177 Mass. 550; *Damman* v. *St. Louis*, 152 Mo. 186; *Bullmaster* v. *St. Joseph*, 70 Mo. App. 60; *Booth* v. *Fulton*, 85 Mo. App. 16; *Messersmith* v. *Buffalo*, 138 N. Y., App. Div. 427; *Chicago* v. *Selz*, 202 Ill. 545; *Rice* v. *St. Louis*, 165 Mo. 636; *Dunstan* v. *New York*, 91 N. Y., App. Div. 355; *Piper* v. *Madison*, 140 Wis. 311, 25 L. R. A. (NS) 242, note; *Wigal* v. *Parkersburg*, 52 L. R. A. (NS) 465, note; 28 Cyc. 1287, 1288, and cases cited; Tiedman on Municipal Corporation, sec. 328; *Jordan* v. *Hannibal*, 87 Mo. 673; *Weightman* v. *Washington*, 1 Black 39; *Milwaukee* v. *Davis*, 6 Wis. 377; *Jenney* v. *Brooklyn*, 120 N. Y. 164, 24 N. E. 274; *New Albany* v. *Roy*, 3 Ind. App. 481, 29 N. E. 611; *Donahue* v. *Kansas City*, 136 Mo. 657; *Platt* v. *Waterbury*, 72 Conn. 551; *Koontz* v. *Dist. of Col.*, 24 App. D. C. 335; *Langley* v. *Augusta*, 118 Ga. 590, 88 Am. St. Rep. 133; *Boston Bottling Co.* v. *Boston*, 183 Mass. 254.

The foregoing general rule has been recognized by the Supreme Court of this State as the law in such cases. *Welsh* v. *Village of Rutland*, 56 Vt. 228; *Winn* v. *Village of Rutland*, 52 Vt. 481; *Bragg* v. *City of Rutland*, 70 Vt. 606; *Sanborn* v. *Enosburg Falls*, 87 Vt. at p. 482.

*Frederick G. Fleetwood* and *John W. Redmond* for defendant.

A municipal corporation is not civilly liable for the neglect of its corporate duties in respect of those matters that are governmental in their nature and which it administers as it were for and in behalf of the state. *Weller* v. *Burlington*, 60 Vt. at p. 35; *Bates* v. *Village of Rutland*, 62 Vt. 178; *School District* v. *Bridport*, 63 Vt. 383; *Stockwell* v. *Town of Rutland*, 75 Vt. 76; *Carty's Admr.* v. *Winooski*, 78 Vt. 104; *Sanborn* v. *Village of Enosburg Falls*, 87 Vt. 479.

The alleged installation and maintenance of the hydrant for general fire protection was a governmental act. *Welsh* v. *Village of Rutland*, 56 Vt. 228; *Wilkins* v. *Rutland*, 61 Vt. 336; 19 R. C. L., 1116, 1117; *Hourigan* v. *Norwich*, 77 Conn. 358, 59 Atl. 487.

The alleged maintenance of the hydrant in the highway was, at most, a negligent act in respect of maintaining the highway in safe condition for public travel, which was a neglect in respect of a governmental function. *Daniels* v. *Hathaway*, 65 Vt. at p. 253; *Bates* v. *Village of Rutland*, 62 Vt. 178; *Dyer* v. *Danbury*, 85 Conn. 128, 81 Atl. 958; *Ring* v. *Cohoes*, 77 N. Y. 83; *Dubois* v. *Kingston*, 102 N. Y. 219, 6 N. E. 273; *City of Wellington* v. *Gregson*, 31 Kan. 99, 103 Pac. 253.

MILES, J. This suit is brought to recover against the defendant for the negligent location of one of its hydrants, in consequence of which, it is alleged that the plaintiff was injured. The declaration was demurred to and the demurrer was sustained, and the case comes here on exception to that action of the court.

The question here involved is of much importance, as it affects most, if not all, of the incorporated villages and cities in the State; for the hydrant, alleged to have been negligently placed, was located, with reference to the street and sidewalk, as hydrants are usually placed, and was constructed for the purpose for which hydrants are maintained and used in villages and cities.

The general rule as to the liability of municipalities for negligence, in the construction and maintenance of water systems, lighting plants, and the like, which are for the private advantage and emolument of the municipality, is that of a natural person; and for the negligence of its duly authorized agent in relation thereto, by which injury is done to another, without the fault of the injured party, the municipality is liable. This rule is not

disputed by either party; nor is there any dispute but that the law in this State is well settled, whatever it may be in other jurisdictions, that a municipality is exempt from liability when injury results from a negligent performance of a governmental duty, by one authorized to perform it, though expense of the performance is borne by the municipality. The dispute in this case arises upon the application of these rules, the plaintiff claiming that the hydrant in question is a part of the water system and not a governmental structure, and the defendant claiming that it is such a structure, exclusively constructed and maintained for a governmental purpose.

By the defendant's charter it was created a fire district, and its trustees were given the power of and made subject to the same restrictions as prudential committees in fire districts, with power to make contracts and expenditures for the preservation of property, in the defendant village, from loss or damage by fire and to provide a supply of pure water for fire, domestic and other like uses, for itself.

The plaintiff in his declaration alleges, in substance, that the defendant is the owner of the water works, and has operated the same for the purpose of supplying the inhabitants of the defendant with water for domestic purposes, and for use in the protection of the property of the inhabitants from loss and damage by fire; that in the process of construction, the defendant placed the hydrant in question in the margin of one of defendant's streets, very close to the traveled track and inside the sidewalk, and that in consequence of its being placed so close to the traveled track, it endangered the life and property of the plaintiff, and of all persons having occasion to use the street.

The declaration being demurred to, the facts stated above are taken to be true. In brief, the negligence alleged is that the hydrant was negligently placed in the street, and that that was the proximate cause of the plaintiff's injury. The defendant concedes that, if the facts stated in the declaration show that the defendant was using the hydrant for its own private advantage and emolument, the judgment below should be reversed; but it claims that the declaration shows that the hydrant was placed where it is located and was being maintained, at the time of the alleged injury, for the sole benefit of the public, and the act in placing it there was a governmental act.

For authorities sustaining its contention, the defendant relies principally upon the case of *Welsh* v. *Rutland*, 56 Vt. 228, 48 Am. Rep. 762. Plaintiff argues that that case is unlike the case at bar, because in that case the negligence complained of was the act of a public officer in the discharge of a governmental duty, and that the direct injury was caused by ice in the street for which municipalities have never been liable. A' complete answer to that position is that the declaration does not count upon a defect in the street, and the decision of that case was not based upon that ground, and the discussion of the case in the opinion of the Court is with reference to the liability of the village on account of its negligence in repairing one of its hydrants. The negligence counted upon in this and the Welsh case is with reference to the hydrant, and in this respect they are alike, and the only difference is that in the Welsh case the negligence alleged consisted in a failure to properly *repair* the hydrant, while in this case it is for a failure to properly *locate* the hydrant. The plaintiff further claims that the Welsh case differs in principle from this case, because in that case the facts show that there was a duly installed and duly authorized fire protective system.

From the charter of the defendant and the allegations in the declaration in this case, it appears that the defendant has a "duly installed and duly authorized fire protective system." Its charter powers for the installation of a fire system are as broad as those in the Welsh case, and the declaration shows that its fire system was completely installed and organized; for the plaintiff alleges, as above set forth, facts indicating that the defendant was duly organized as a fire district.

All that is alleged to have been done by the defendant in the construction of the fire department and the installation of the hydrant in question, could not have been legally done without some kind of an organized system, and the presumption must be that it was done under its charter.

The charter of Rutland was more restricted, if anything, than the defendant's charter; for the defendant's charter gave to the trustees of the defendant, as stated above, all the powers of prudential committees of fire districts, and for such powers, see G. L. 4195-4201. The difference in the facts of the two cases is a difference in fact merely and not in principle. In the Rutland charter the supervision of the first department was largely committed to engineers and wardens whose duties were defined

in the charter.    In the case at bar the supervision of that department is given to the trustees as prudential committees in fire districts, whose duties are declared in G. L., sections above referred to.

From a careful examination of the Welsh case we think the principle involved in that case is not materially different from the principle involved in the case at bar, and if the repair of the hydrant in the Welsh case was a governmental act, the placing of the hydrant in this case was equally a governmental act, and, if that case states the law, the placing of the hydrant in question was a governmental act.    Strictly speaking, the hydrant in question was not a part of the water system over which the water commissioners had charge, and for which they were empowered to fix water rates; and though the hydrant was connected with the water main, it was not a part of the water system constructed for the benefit or emolument of the defendant (*Sanborn et al.* v. *Enosburg Falls,* 87 Vt. 479, 89 Atl. 746) ; and though attached to that system it was set apart for the exclusive benefit of the public.

In the Sanborn case the facts disclosed that defendant put, on the side of one of its streets, a "barrel catch basin"; that there was a tile running under the sidewalk into this barrel and a six-inch tile from the barrel across the street, under ground, connected with the sewer of the village; that the tile was put in to protect the sidewalk and to carry surface water into the sewer; that the tile, sluice and catch basin became frozen and were neglected by the defendant in consequence of which the plaintiff's property was injured by overflowing water.    The plaintiff sought to recover on the ground that the negligence was the defendant's failure to keep in repair its sewer system.    The court held that the tile and catch basin were not a part of the sewer system, though connected with it, but were maintained for the protection of the street, and that the defendant was not liable for the injury.

In 19 R. C. L. 1116, § 397, it is stated, that it makes no difference that the municipality uses the same reservoirs and pipes for its fire service that it employs for the distribution of a public supply for domestic purposes, from which it derives a profit, since the two functions are clearly distinguishable.    So here, the hydrant was maintained for the protection of the public from loss or damage by fire, as stated in the plaintiff's declaration.

This case, being in principle substantially like the Welsh case, deserves the same disposition as should be given to that case. If the decision in that case is sound, the judgment in this case should be affirmed.

The Welsh case has been cited as authority and with approval in *Weller* v. *Burlington*, 60 Vt. 28, 12 Atl. 215; *Bates et ux.* v. *Rutland*, 62 Vt. 178, 20 Atl. 278, 9 L. R. A. 363, 22 Am. St. Rep. 95; *School Dist.* y. *Bridport*, 63 Vt. 383, 20 Atl. 570; *Sanborn* v. *Enosburg Falls, supra,* and other Vermont cases, and it may now be treated as having declared the settled law of the state. The plaintiff does not directly attack its soundness, but seeks to avoid its effect by setting up a distinction between that case and the case at bar. He argues that in the Welsh case the officer, whose negligence was the alleged cause of the injury, was a public officer, because he was a first assistant engineer of the fire department, and that in this case the hydrant in question was not located by any public officer.

We fail to see the distinction claimed by the plaintiff. In the Welsh case the alleged negligent act was performed by an officer of the fire department under the direction of the village trustees, and in this case, the negligent act was performed by "the defendant by its servants and agents." We do not apprehend it is necessary for an act to be performed by any particular officer, to give to the act the character of a public or governmental act. It is enough if the act is performed by one having legal authority to perform it; and while performing the act he is by virtue of the performance of that act, a public officer.

*Bates et ux.* v. *Rutland, supra,* was an action for negligence in locating a stone crusher too near the highway, in consequence of which the plaintiff's horse was frightened and the plaintiff thrown out and injured. The crusher was located by direction of the village trustees outside of the limits of the village with the consent of a majority of the selectmen, and was being operated by authority of the trustees in preparing material with which to repair the village streets. It was held that the action did not lie, the Court saying: "The officers by whom the work was being performed were, for this purpose, public officers, and for their negligent act an action does not lie against the defendant."

In another place in the opinion the Court, recognizing the principle that the character of the employment is determinative of whether the act is governmental or otherwise, say: "It must

be conceded that the defendant corporation is a political sub-division of the State, chartered and organized mainly for govern-mental purposes. Then, were the trustees and street commis-sioners, at the time of the accident, engaged in a public service, or in a work that was for the peculiar benefit of the defendant in its local or special interests? The character of the employ-ment is determinative of the defendant's liability for the acts of these officers.''

In *Fisher* v. *City of Boston,* 104 Mass. 87, 6 Am. Rep. 196, the court say: ''It makes no difference whether the Legislature itself prescribes the duties of the officers charged with the repair and management of fire engines, or delegates to the city or town the definition of those duties by ordinance or by-law. However appointed or elected, such persons are public officers, who per-form duties imposed by law for the benefit of all the citizens, the performance of which the city or town has no control over, and derives no benefit from, in its corporate capacity.''

In *Hafford* v. *City of New Bedford,* 16 Gray (Mass.) 297, the court say: ''The members of the fire department of New Bed-ford, when acting in discharge of their duties, are not servants or agents in the employment of the city for whose conduct the city can be held liable; but they act rather as officers of the city charged with the performance of a certain public duty or service and no action will lie against the city for their negligence or im-proper conduct while acting in the discharge of their official duty.''

In the Welsh case the repair complained of was being done by the first assistant engineer, under the direction of the trustees. Under the Rutland charter the duties of the engineers and wardens were to inquire into the condition of the property of the fire department and to supervise and care for the same, and report its condition to the trustees of the village as often as cir-cumstances rendered it necessary, for the safe-keeping and proper repair of such property. This would seem to indicate that the duties of the engineers and wardens were to look after the property and report to the trustees, who were to direct to be made such repairs as they adjudged were necessary, and that was what was done in the Welsh case. The trustees directed the engineer to do what he did do. The act was that of the trustees through the engineer, and from anything appearing in the case, the legal effect of the act would have been the same if performed

by the trustees personally, or by some other persons, not connected with the fire department, under the direction of the trustees.   It is the lawful act performed for the public good that determines its governmental character.

It does not appear in the case at bar who located the hydrant complained of, but we are to assume that it was by some one having legal authority to locate and construct it; and, that being so, and for the public good, and that alone, it falls within that class of cases of which the Welsh case is one, and the Sanborn case, and the cases therein cited are others.   In the Welsh case it is held as follows: ''The fire department and its service are of no benefit or profit to the village in its *corporate* capacity.   They are not a source of income or profit to the village, but of expense, which is paid—not out of any special receipts or fund, nor defrayed even in part, by assessments upon particular persons or classes benefited, as in case of sewers or water works—but from the general fund raised by taxation of all the inhabitants.''   In another place in the opinion of the Court it is said: ''While it may be true that the hydrant is no part of the aqueduct, so far as *private* uses of the water thereby supplied are concerned, it is certainly the very means by which the *public* uses of the water— namely, its use for the extinguishing of fires and the like—are obtained.''

The Welsh case clearly holds that a hydrant is a public or governmental structure, and it is a matter of common knowledge that it is used exclusively for public purposes, and is so constructed as to be of no value for individual or private uses. This principle is recognized in *Tainter* v. *Worcester,* 123 Mass. 311, 25 Am. Rep. 90, in which the court say: ''The protection of all the buildings in a city or town from destruction or injury by fire is for the benefit of all the inhabitants and for their relief from a common danger; and cities and towns are therefore authorized by general laws to provide and maintain fire engines, reservoirs and hydrants to supply water for the extinguishment of fires.''

And it is also recognized in *Jewett* v. *City of New Haven,* 38 Conn. 368, 9 Am. Rep. 382, in which the court quoted with approval from *Wheeler* v. *City of Cincinnati,* 19 Ohio St. 19, 2 Am. Rep. 368, as follows: ''The laws of this state have conferred upon its municipal corporations powers to establish and organize fire companies, procure engines and other instru-

ments necessary to extinguish fires and preserve the buildings and property within their limits from conflagration; and to prescribe such by-laws and regulations for the government of such companies as may be deemed expedient. But the powers thus conferred are in their nature legislative and governmental.''

In *Fisher* v. *Boston, supra,* the court say: ''Cities and towns are authorized by law to procure and maintain fire engines and reservoirs of water therefor, and to pay the necessary expense thereof, either by general taxation or out of moneys belonging to the town, because the prevention of damage to buildings by fire is an object which affects the interest of all the inhabitants and relieves them from a common burden and danger, and is therefore within the scope of municipal authority.'' And further along in the opinion the court say: ''In the absence of express statute, therefore, municipal corporations are no more liable to actions for injuries occasioned by reason of negligence in using or keeping in repair the fire engines owned by them than in the case of a town house or public way.'' To the same effect are *Hafford* v. *New Bedford, supra; Eastman* v. *Meredith,* 36 N. H. 284, 72 Am. Dec. 302; *Bigelow* v. *Randolph,* 14 Gray (Mass.) 541; *Oliver* v. *Worcester,* 102 Mass. 489, 3 Am. Rep. 485.

The great weight of authority is to the effect that hydrants and apparatus for the extinguishment of fire in a municipality are in their nature public or governmental property, and that for negligence in their use and maintenance for a public purpose no action will lie.

The plaintiff claims that while it may be true that hydrants and apparatus used for the extinguishment of fires in a village or city may be public or governmental property, yet in this case the defendant is liable, because of a faulty execution of the plan for the installation of the fire department. In support of this he can claim no more than is alleged in the declaration, namely, that the hydrant was improperly located. He fails to distinguish between a faulty *execution* of a plan and a faulty *location* of a part of a plan. In the location of a plan the village authorities must necessarily deliberate and adjudge upon the system or plan of location, and such action on the part of the village trustees is in its nature judicial, for which no private action is incurred for errors of judgment or want of forecast. Such is the holding in *Winn* v. *Rutland,* 52 Vt. 481, much relied upon by the plaintiff, in which the Court say: ''In acting under

the chartered power, the village authorities must necessarily deliberate and adjudge upon the system or plan of the work—when to perform it and where to locate it. So far, no liability to private action is incurred for errors of judgment or want of forecast. The inauguration of a plan of sewerage, so long as it remains in mere resolution, cannot in the nature of things, work actionable injury or harm to individuals. Having devised a plan, it may be carried into execution with due care and skill, without risk of private action."

The same principle is held in *Tainter* v. *Worcester, supra,* in which the court say: "The works to be constructed by the city of Worcester, under the statute of 1864, were, so far as related to safeguards against fire, to be erected and maintained by the city for the benefit of the public and without pecuniary compensation or emolument. The questions whether and where the public hydrants should be erected were within the exclusive control of the municipal authorities, as the public interest might seem to them from time to time to require."

To the same effect is *Hill* v. *City of Boston,* 122 Mass. 344, 23 Am. Rep. 332, in which the court say: "As to common sewers, built by municipal authorities under power conferred by law, it has been held, upon great consideration, that, as the power of determining where the sewers shall be made involves the exercise of a large and *quasi* judicial discretion, depending upon considerations affecting the public health and general convenience, therefore no action lies for a defect or want of sufficiency in the plan or system of drainage adopted within the authority so conferred."

We think, and so hold, that the location of the hydrant in question was a public and governmental act performed by the defendant through its agents, who acted in the capacity of governmental officers, and that the Welsh case is full authority for this holding, and must control and govern this case.

*Judgment affirmed.*