No. 32,951

PAUL R. PERRY and EDRA FAY PERRY, *Appellants*, v. CITY OF
INDEPENDENCE, *Appellee.*

(69 P. 2d 706)

Opinion filed July 10, 1937.

*Thomas E. Wagstaff* and *Jay W. Scovel,* both of Independence, for the appellants.

*W. D. Kimble* and *Chester Stevens,* both of Independence, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This case presents the question of the immunity of a municipal corporation from liability for a tort.

The petition alleges that under the direction of the superintendent of the municipal waterworks system of the defendant city "there was dug a ditch about 30 feet long and about 5 feet deep and four (4) feet wide, from near the north property line of East Locust street to the north curb line thereof, and that said ditch was located at a point about twelve (12) feet west of the west curb line of Fifteenth street. That at or near the north end of said ditch was a fire hydrant; that said ditch continued to remain open and unprotected from Monday, the 15th of July, 1934, until Saturday, the 21st day of July, 1934. That on the afternoon of Friday, the 20th of July, 1934, at what hour plaintiffs do not know, city water from said fire hydrant or said pipes connected therewith was permitted to flow into said ditch to a depth of about 22 inches." It was alleged that the plaintiffs were the parents of Julia Carol Perry, a minor daughter then twenty months of age; that on July 20, 1934, the child fell into the ditch and was drowned.

It was further alleged that the death of the child was caused by the negligence of the defendant, its agents, servants and employees

in constructing the ditch on West Locust street and permitting the ditch to remain open and uncovered, with no guard stationed there to warn people, including children, against playing in or around the same or falling into said ditch, and by the negligence of defendant, through its agents, servants and employees, in abandoning and leaving said ditch open with water therein, without screening it off, fencing it in or otherwise guarding the ditch, which defendant knew was an attractive nuisance and dangerous to life, limb and health of all persons who might fall therein.

The defendant city filed a demurrer to plaintiffs' petition, which demurrer was sustained by the trial court, and this appeal is from an order sustaining the demurrer. The sole question presented is whether the petition states facts sufficient to constitute a cause of action.

We think the demurrer was properly sustained. The establishment of a fire department is specifically authorized, and the duties of the city officers charged with the establishment and operation of the fire department are defined by the statutes of this state. Our statute, G. S. 1935, 14-402, authorizes cities of the second class "to levy and collect taxes for general revenue purposes, including the maintenance of arc lights for street-lighting purposes, for fire hydrants and water for fire protection." G. S. 1935, 14-421, authorizes the governing body of any city of the second class to regulate the construction of and order the suppression of fire hazards; to procure fire engines, hooks, ladders, buckets and other apparatus, and to organize fire companies, and to prescribe rules of duty and the government thereof. G. S. 1935, 14-422, authorizes the governing body of any city of the second class to establish fire limits within which no building or structure shall be constructed, removed or repaired except of stone or other incombustible material. G. S. 1935, 14-1307, provides that the mayor shall be the commissioner of the police, fire and health departments and shall have them under his special charge; that he shall be responsible for the enforcement of all city ordinances and police regulations and shall have general supervision of the fire department.

From these statutes it appears that the maintenance and operation of a fire department and fire hydrants by the city is a governmental function.

The rule is well settled in Kansas that a municipality is not liable for the negligence of its agents and employees when engaged in the

performance of governmental functions. (*Foster v. Capital Gas & Electric Co.,* 125 Kan. 574, 265 Pac. 81; *Frost v. City of Topeka,* 103 Kan. 197, 173 Pac. 293; *Butler v. Kansas City,* 97 Kan. 239, 155 Pac. 12; *Rose v. City of Gypsum,* 104 Kan. 412, 179 Pac. 348; *Bruce v. Kansas City,* 128 Kan. 13, 276 P. 2d 284; *Everly v. City of Gas,* 95 Kan. 305, 147 Pac. 1134.)

In the case now before us the negligence complained of by the plaintiffs was the opening of a ditch in connection with a fire hydrant, permitting water to remain in said ditch so that the infant daughter of the plaintiffs was attracted thereto, and that the agents and employees of the city were negligent in permitting the ditch to remain open. Under the allegations of the petition the ditch in question was dug to a fire hydrant. It cannot be doubted that a city may maintain a municipal water plant and operate it in a dual capacity. While the city is maintaining the water system for the use of its fire department it is performing a public governmental function and is not liable for the negligence of its officers or servants in the establishment or maintenance of such water system for the benefit of the fire department. In the case of *Normal School v. City of Charleston,* 271 Ill. 602, 111 N. E. 573, the court said:

"Municipalities are created primarily for the exercise of such portion of the powers of sovereignty within the corporate limits as the General Assembly may see fit to bestow upon them, and they may also be authorized to supply conveniences to the inhabitants, such as bringing water from some source of supply and distributing it to those desiring it. In the creation of a system of waterworks and the operation of the same for the purpose of protection against fire, flushing sewers, or other uses pertaining to the public health and safety, the city is in the exercise of the police power and is therefore exercising a governmental function. *Wilcox v. City of Chicago,* 107 Ill. 334 [47 Am. Rep. 434]; *City of Chicago v. Selz, Schwab & Co.,* 202 Ill. 545 [67 N. E. 386]. In supplying water for the use of the inhabitants for domestic and commercial purposes, a municipality is not in the exercise of a governmental power, but acts in the same capacity as a private corporation, although the business is carried on for the public advantage, and, being public in its nature, is impressed with a public use. *Wagner v. City of Rock Island,* 146 Ill. 139 [34 N. E. 545, 21 L. R. A. 519]; *City of Chicago v. Town of Cicero,* 210 Ill. 290 [71 N. E. 356]; *People v. Schlitz Brewing Co.,* 261 Ill. 22, [102 N. E. 555]. There are material distinctions between the exercise of governmental powers and those which are in their nature private, in the fact that in the exercise of governmental powers a municipality is not liable to a private action, while it is liable for injuries resulting from improper exercise of a power in its private capacity." (p. 605.)

In *Morgan v. Village of Stowe,* 92 Vt. 338, 104 Atl. 339, 341, it was said:

"From a careful examination of the Welsh case we think the principle involved in that case is not materially different from the principle involved in the case at bar, and if the repair of the hydrant in the Welsh case was a governmental act, the placing of the hydrant in this case was equally a governmental act, and, if that case states the law, the placing of the hydrant in question was a governmental act. Strictly speaking, the hydrant in question was not a part of the water system over which the water commissioners had charge and for which they were empowered to fix water rates; and, though the hydrant was connected with the water main, it was not a part of the water system constructed for the benefit or emolument of the defendant (*Sanborn et al. v. Enosburg Falls,* 87 Vt. 479, 89 Atl. 746), and, though attached to that system, it was set apart for the exclusive benefit of the public. . . .

"So here, the hydrant was maintained for the protection of the public from loss or damage by fire, as stated in the plaintiff's declaration. This case, being in principle substantially like the Welsh case, deserves the same disposition as should be given to that case. If the decision in that case is sound, the judgment in this case should be affirmed." (p. 344.)

(See, also, *Welsh v. Village of Rutland,* 56 Vt. 228, 48 A. R. 762; *Edgerly v. Concord,* 62 N. H. 8, 13 A. S. R. 533; *Brown v. Salt Lake City,* 33 Utah 222, 93 Pac. 570.)

In *Barcus v. City of Coffeyville,* 129 Kan. 238, 282 Pac. 698, an action was brought by the widow and children of Tom Barcus for damages for his death, alleged to have been caused by the neglect of the defendant city in that its fire truck, driven by its firemen on the way to a fire, collided with a car in which the deceased was riding. In holding that the defendant city was not liable, this court said:

"In maintenance and operation of its fire department a city acts in its governmental capacity. In 9 A. L. R. 143 and 33 A. L. R. 688 are exhaustive annotations on the question of the 'fire department as pertaining to the governmental or to the proprietary branch of municipality.' The annotator uses this language:

" 'The overwhelming weight of authority is to the effect that a fire department, maintained by a municipal corporation, belongs to the public or governmental branch of the municipality so as to relieve it, at least in the absence of statutory provision to the contrary, from liability for injuries to person or property resulting from malfeasance or nonfeasance connected with the maintenance and operation thereof.' (9 A. L. R. 143.)

"The two annotations collect more than one hundred cases in support of this statement of the law. Some of the later cases to the same effect are *Rollow v. Ogden City,* 66 Utah 475; *Young v. City of Lexington,* 212 Ky. 502; *Mabe v. Winston-Salem,* 190 N. C. 486; *Gregoire v. Lowell,* 253 Mass. 119; *Florio v. Jersey City,* 101 N. J. L. 535; *Barnes v. City of Waco* (Tex. Civ. App.), 262 S. W. 1081; *White v. City of Casper et al.,* 35 Wyo. 371." (p. 239.)

In the present case the city was digging a ditch to a fire hydrant. In constructing the ditch the city was clearly engaged in a govern-

mental function—to protect the public from loss or damage by fire— and under the settled law in this state the court was right in sustaining the demurrer to the plaintiffs' petition. The judgment is affirmed.