## Malter, Appellant, *v.* South Pittsburgh Water Company and Whitehall Borough.

232

Argued October 2, 1963.  Before Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*H. N. Rosenberg*, with him *Rosenberg & Rosenberg*, for appellants.

*James F. Manley,* with him *Burns & Manley,* for appellees.

*D. H. Trushel,* with him *Dickie, McCamey, Chilcote & Robinson,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 17, 1964:

Joseph H. Malter and Elsie Lee Malter, his wife, owned a house in Whitehall, Allegheny County, which no longer exists because it met destruction by flames which consumed it on March 9, 1960. The owners placed the blame for their loss on the Borough of Whitehall and the South Pittsburgh Water Company, which, according to the complaint in trespass filed against them, maintained and operated the water system in that borough. The plaintiffs aver that if the fire hydrants serving their house had not been allowed to become "rusted, decayed and clogged," if the defendants had maintained a good, safe and proper water system, if they had properly inspected, cleaned and serviced the fire hydrants and their water mains, the fire would not have destroyed their property. The defendants filed preliminary objections stating that the complaint did not state a cause of action upon which relief could be granted. The Court of Common Pleas of Allegheny County, in which the suit was filed, sustained the objections and dismissed the complaint.

We have this day filed an opinion in the case of *Doyle v. South Pittsburgh Water Company,* 414 Pa. 199, wherein some of the questions involved in the instant litigation are discussed. This case, like the *Doyle* case, is clearly to be distinguished from those cases where the courts have held that a mere failure to supply water does not constitute a breach of duty owing to injured parties by the water company or the municipality. The rule in controversy here is the one

appertaining to the duty requiring reasonable care in the maintenance of a water system.

In the *Boyle* case the plaintiffs did not join the municipality as a party defendant. The plaintiffs here have charged Whitehall Borough with the same negligence attributed to the South Pittsburgh Water Company. It would appear therefore that the charge of control and negligence against the Borough is intended as an allegation that the water company acted as the Borough's servant in which event we have issues. before us not present in the *Doyle* case.

Is the defendant water company immune from liability for its negligence on the ground that the alleged negligence occurred during the course of performance of a governmental function in behalf of the Whitehall Borough, as the Borough's servant? Was the Borough engaged in a governmental performance when it committed the negligence charged to it?

It cannot be questioned that in the maintenance and operation of a water system, a municipality is not engaged in a governmental, but a proprietary function. This rule was articulated by this Court over a half century ago when we said in the case of *Jolly v. Monaca Borough*, 216 Pa. 345, 348: "A municipal corporation, in supplying water, or any other commodity, to its inhabitants individually, acts in a private, and not in a public, capacity . . .

"The situation was well put by Judge Pershing in his opinion in Brumm's Appeal, 22 W.N.C. 137, affirmed by this court. He there said: 'A municipal corporation which supplies its inhabitants with gas or water does so in its capacity of a private corporation, and not in the exercise of its powers of local sovereignty. If this power is granted to a borough or city, it is a special private franchise, made as well for the private emolument and advantage of the city as for the public good.' "

We pointed out also in that case that: " 'Water rates paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity' ".

Thus, since the negligence charged here by the plaintiffs has to do with the operation and maintenance of a water system as a proprietary function, no phase of government as such is involved. The responsibility of a municipality in connection with maintenance of water systems has been established through many cases: *Luterman v. Philadelphia,* 396 Pa. 301; *McHale v. Throop Borough,* 13 Pa. Superior Ct. 394; *Boyle v. Pittsburgh,* 145 Pa. Superior Ct. 325. In the last case mentioned, the Superior Court referred to decisions in other jurisdictions affirming the proposition that there is no immunity from negligence in the repair and maintenance of water hydrants, even though used for fire fighting purposes. "In Dunstan v. City of New York, 91 App. Div. Rep. 355, . . . The New York Court said it would not do to relieve the city from liability for negligence in failing to keep this lateral pipe connecting the hydrant with the main in repair upon the theory that it was constructed and used solely for fire purposes.

"In City of Chicago v. Selz, Schwab & Co., 202 Ill. 545 . . . The court there held that since the injury to the plaintiff did not arise from negligence in the use of the hydrant for the purpose of extinguishing fire that the city was liable for damage caused by its negligence in failing to repair the leaking pipe.

"In Stifel et al. v. City of St. Louis, 181 S.W. 577, we find that the appellate court of the State of Missouri held that where a municipality maintained a water system and as a part thereof and in connection therewith had fire plugs on branch lines, that the municipality cannot escape liability for neglecting to main-

tain and repair these branch lines, by saying that it was simply acting in a governmental capacity."

It would seem clear from the foregoing that negligence in repairing and maintaining water facilities to be used by fire departments, in the event of fire, does not immunize the municipality from liability for that negligence. The Supreme Court of Illinois made this point very clear in *City of Chicago v. Selz, Schwab & Co.,* supra, when it said that the injury to the plaintiff there "did not arise from negligence in the use of the hydrant for the purpose of extinguishing fire," but from negligence in the operation of the municipality's system of water works in failing to repair a leak. Similarly, in the case before us, there was no negligence in the use of the hydrant by the fire department; the only negligence averred was charged to the water department, which officiates in this connection, specifically in a proprietary capacity.

The defendant borough has cited in support of its position a lower court decision, *McCombs v. City of McKeesport,* 105 P.L.J. 207, where deaths occurred when the McKeesport Fire Department allegedly caused contaminated water to enter the plaintiff's spring. The plaintiff sued the city of McKeesport and the court held there was no liability since the municipality was acting in a governmental capacity through its fire department when the unfortunate deaths occurred. This decision relied on by the borough points up the fallacy of its position rather than supports it. The court said: "The damages resulted from *the operation of a governmental function through the fire department and not the operation of the business of selling water.* The cases uniformly hold that there is no liability on the part of a defendant city for the alleged negligence of its fire department in the course of the performance of a governmental function in the nature of a health measure . . . (Emphasis supplied)."

It said further that the particular act in question could not be treated "as being in the nature of a purely proprietary act, as a private business transaction in the operation of a water system with a profit motive," but where that happens (as in the case at bar) the municipality is "subject to the ordinary law of liability for negligence in the performance thereof."

In the *McKeesport* case the alleged negligence was that of the fire department, hence the municipality was not liable, but in the instant situation the fire department was wholly outside the periphery of any blameworthy act. The Whitehall Borough was charged with negligence in the control of its ordinary business of operating the business of selling water. Had the borough's water department done its duty the plaintiffs might well still have their house.

The test to be applied is not the form of the damage but the processes of the negligence which led to the damage. Did the act of negligence occur during the performance of a governmental or a proprietary function? Once it is determined that the negligence occurred while the municipality was engaged in a proprietary function, liability inevitably attaches. To hold otherwise would lead to the incongruous result that liability would attach in every case where the negligence involved the maintenance of fire hydrants except where fire follows the negligence. It would mean that the municipality would be liable for negligence where the broken hydrant floods a neighboring house but would not be liable where the same broken hydrant could not be used to fight a fire. Lawyers, judges and all other interested parties should be spared so unfair, illogical, irrational and grotesque a distinction.

The negligence outlined in the plaintiffs' complaint charges the municipality with failure to discharge its proprietary duty in maintaining and operating the borough's water system. The action is proper and the bor-

ough should have been required to answer. The duty to answer on the part of the water company, as pointed out in our decision in *Boyle v. South Pittsburgh Water Co.,* is equally clear.

The defendants argue further that the negligence charged in the complaint is too remote to be held as the proximate cause of the plaintiffs' losses. A jury could well find that the defendants' conduct, as set forth in the complaint, created a perilous condition which it knew or should have known would result in the very type of harm and injury which followed. The fire could not be regarded as an unforeseeable event. The allegations support a finding that the defendants had breached a duty owed to the plaintiffs to use reasonable care in the operation and maintenance of the water system which they erected and that the breach of that duty was the proximate cause of plaintiffs' loss.

Judgment reversed.

Mr. Justice EAGEN and Mr. Justice ROBERTS concur in the result.

———

DISSENTING OPINION BY MR. JUSTICE JONES:

For the reasons given in *Doyle v. South Pittsburgh Water Co.,* 414 Pa. 199, 199 A. 2d 875, I dissent.

Mr. Justice COHEN joins in this dissenting opinion.