No. 48,509

NED B. GORRELL and ANN J. GORRELL, *Appellants,* v. CITY OF
PARSONS, KANSAS, *Appellee.*

(576 P.2d 616)

Opinion filed April 1, 1978.

*Charles F. Forsyth,* of Fleming & Forsyth, of Erie, argued the cause and was on
the brief for the appellant.

*Richard C. Dearth,* of Parsons, argued the cause and was on the brief for the
appellee.

The opinion of the court was delivered by

MILLER, J.: This is a direct appeal by the plaintiffs, Ned B.
Gorrell and his wife, Ann J. Gorrell, from an order of the Labette
District Court granting summary judgment to the defendant, the
City of Parsons, on its motion. Plaintiffs contend that the trial
court erred in entering summary judgment when there were
contested issues of fact, and that the court erred in applying the
doctrine of governmental immunity.

We deem it necessary to set forth in some detail the factual
background, as reflected in the pleadings and the answers to
interrogatories which were on file at the time summary judgment
was entered.

Dr. and Mrs. Gorrell owned and made their home upon a tract
of approximately 12 acres within the city limits of the City of
Parsons. Shortly before noon on January 22, 1975, Mrs. Gorrell
discovered that several city employees had driven onto her lawn,
where they were cutting her trees. Mrs. Gorrell asked them to
stop, since they were illegally on her property and they had no
right to cut her trees. The men refused to stop, saying that they
were following the written orders of their boss. Mrs. Gorrell
demanded that they leave her property immediately; the men
refused to do so, and continued cutting her trees. Mrs. Gorrell

then called the city manager, but was told that he was too busy to talk to anyone that day, and that she should call the park department. She did so, but no one answered the phone. She again called the city manager's office, and was referred to a Mr. Freeburg. She told him what was happening, but got no response. The crew continued to cut plaintiffs' trees.

At midafternoon she reached the mayor. He called the city manager and arranged for the city manager to go to the Gorrell property at five o'clock that afternoon, but he took no action to stop the city crew from continuing with the destruction of plaintiffs' trees. At five o'clock the city manager appeared at plaintiffs' home, checked a right of way marker, and acknowledged to Mrs. Gorrell that the trees were on her property, not on the right of way, and that the cutting was wrongful. He made various promises.

Thereafter, Dr. and Mrs. Gorrell counted the stumps, secured an estimate of the damage, and wrote to the city manager; there was no immediate response; later, city officials suggested they wait until fall, some nine or ten months after the occurrence. Finally, after much runaround, plaintiffs consulted counsel and learned that they must file a claim within six months. They filed a claim on July 8, seeking $9,236.50 for the 104 trees cut by the city employees on January 22. The City rejected the claim, and this action followed.

The petition, filed July 30, 1975, describes the real estate, alleges ownership, recites the factual background, the damages, the filing and rejection of the claim, and seeks actual damages of $9,236.50, plus punitive damages of $10,000.

The answer—in spite of the admonitions of K.S.A. 60-208(b) and K.S.A. 60-211—contains a broad general denial of every factual allegation contained in the petition. In addition, it alleges that the petition fails to state a "cause of action" upon which relief may be granted; that the City is immune from this suit by virtue of the doctrine of governmental immunity; and that plaintiffs failed to properly comply with K.S.A. 12-105, as amended, compliance being a condition precedent to bringing an action.

The City filed motions to dismiss and for summary judgment. The motion to dismiss was based, *inter alia*, upon the contention that plaintiffs' claim failed to comply with K.S.A. 12-105, apparently on the basis that although the claim stated the date of the

alleged occurrence, it failed to state the time of day each tree was felled. We need consider this claim no further, except to state that the statute does not require such detail, and the statement of the date was a patently sufficient statement of the time of the happening, and the City could not be misled by the claim. *Cook v. Topeka,* 75 Kan. 534, 536, 90 Pac. 244 (1907).

The motion for summary judgment alleged that the acts complained of in the petition were governmental in nature, and that the City is not liable for acts of its officers and employees in the performance of a governmental function under the doctrine of governmental immunity. The City also sought to limit the amount of plaintiffs' prayer to actual damages, since punitive damages were not sought in the claim filed with the City. By their briefs and argument, plaintiffs have now abandoned any claim for punitive damages, and that is no longer an issue.

Interrogatories were answered by plaintiffs, briefs were filed, and the motion for summary judgment was submitted to the trial court. On June 28, 1976, the court granted the City's motion for summary judgment, and entered judgment in favor of the City. In its Memorandum of Decision, the court said:

"Considering the facts of the case presented by the pleadings in the light most favorable to the plaintiff, it is apparent that the plaintiff's theory for recovery of damages is that this is an action (in tort) for the wrongful, willful and wanton conversion and destruction of plaintiff's property by the employees of the defendant for which plaintiff demands both actual and punitive damages.

"The defendant's allegation that the acts complained of in plaintiff's Petition are governmental in nature is not controverted; and there is no allegation on the part of the plaintiff that the defendant was acting in a proprietary capacity rather than a governmental capacity. Therefore, the Court finds that the defendant's employees were engaged in the performance of governmental functions.

"The law in Kansas is well settled by a long line of cases that in the absence of a statute imposing liability a city is not liable in tort for the negligence or misconduct of its officers or employees in the performance of governmental functions. [Citing cases.]

"Accordingly, the Court finds that the defendant's motion for Summary Judgment should be granted. . . ."

We acknowledge that it has long been the rule in this state that a municipality is not liable for the negligent acts of its officers or employees in the performance of a governmental function, unless such liability is expressly imposed by law. Exceptions engrafted onto this general rule include the imposition of liability (1) where the city creates or maintains a nuisance; (2) where its negligent

and wrongful acts occur when it is acting in a proprietary capacity; (3) where it negligently fails to keep its streets reasonably safe for public use; and (4) where it has purchased liability insurance to cover the causal negligence. *Grantham v. City of Topeka,* 196 Kan. 393, 397-398, 411 P.2d 634 (1966); *Bribiesca v. City of Wichita,* 221 Kan. 571, 561 P.2d 816 (1977); *Sly v. Board of Education,* 213 Kan. 415, 516 P.2d 895 (1973); *Culwell v. Abbott Construction Co.,* 211 Kan. 359, 506 P.2d 1191 (1973); *Gardner v. McDowell,* 202 Kan. 705, 451 P.2d 501 (1969); *Paul v. Topeka Township Sewage District,* 199 Kan. 394, 430 P.2d 228 (1967); *Grover v. City of Manhattan,* 198 Kan. 307, 424 P.2d 256 (1967); *Rose v. Board of Education,* 184 Kan. 486, 337 P.2d 652 (1959); *Steifer v. City of Kansas City,* 175 Kan. 794, 267 P.2d 474 (1954); *Rhodes v. City of Kansas City,* 167 Kan. 719, 208 P.2d 275 (1949); *Wray v. City of Independence,* 150 Kan. 258, 92 P.2d 84 (1939); and *Eikenberry v. Township of Bazaar,* 22 Kan. 556 (2d ed. 389) (1879). The origin and history of the immunity doctrine, its adoption and application in Kansas, and the exceptions created to temper the harshness of its application, are discussed in detail by Chief Justice Fatzer in *Brown v. Wichita State University,* 217 Kan. 279, 291, 292, 540 P.2d 66 (1975), modified on reh. 219 Kan. 2, 547 P.2d 1015 (1976), app. dis. 429 U.S. 806, 50 L.Ed.2d 67, 97 S.Ct. 41 (1976). We need not repeat that discussion here.

It is interesting to note, however, that prior to statehood, a contrary view was expressed by the Territorial Supreme Court. Associate Justice Joseph Williams, speaking for a unanimous court in *City of Leavenworth v. Casey,* 1 Kan. (2d ed.) 544, 549 [McCahon *124, 130] (1860), said:

". . . The [city's] charter does not place her beyond the reach of responsibility for acts of commission or omission done or left undone, by her or her agents, by which injury or wrong may accrue to the persons or property of individuals within her corporate jurisdiction. Such is the theory of our government. A corporation is an artificial body created by law, which, as well as a natural body or person, is amenable to the law. Like others of a similar character, existing and acting by virtue of her charter provisions as a corporation, she is capable of suing and being sued in actions at law. In view, then, of the act of incorporation of the city, and the law of such incorporations, as established by the uniform current of judicial decision, we hold that such a body corporate is legally and justly amenable to the law in redress of wrongful acts done by her or her agents, either willfully or through negligence, to the injury of other persons or their property. . . ."

The doctrine of governmental or sovereign immunity, as noted

in *Brown,* supra, and in *Carroll v. Kittle,* 203 Kan. 841, 847, 457 P.2d 21 (1969) is of judicial origin. The legislature enacted a general governmental immunity statute, K.S.A. 46-901, *et seq.,* following our decision in *Carroll,* but the provisions of that act are inapplicable to municipal governments. K.S.A. 46-902. The immunity of municipalities, then, rests upon judicial decision and not upon the constitution or statutory enactment.

We have expressed our dissatisfaction with the governmental immunity doctrine and its inequities in *Brown* and *Carroll.* In *Brown,* we said:

"The doctrine of governmental immunity is an historical anachronism which manifests an inefficient public policy and works injustice upon everyone concerned. The doctrine and the exceptions thereto operate in such an illogical manner as to result in serious inequality. Liability is the rule for negligent or tortious conduct, immunity is the exception. But when the tortfeasor is a governmental agency immunized from liability, the injured person must forego his right to redress unless within a specific exception. Equality is not achieved by artificial exceptions which indiscriminately grant some injured persons recourse in the courts and arbitrarily deny such relief to others. . . ." (217 Kan. at 297.)

Likewise, the distinction between governmental and proprietary functions provides no sound basis for dispensing or denying justice. The observation by Justice (now Chief Justice) Schroeder in *Wendler v. City of Great Bend,* 181 Kan. 753, 758, 316 P.2d 265 (1957), illustrates the inequity:

". . . Shadowy distinctions between 'governmental' functions and 'proprietary' affairs . . . have been used to decide cases, all without much rhyme or reason."

Turning to the case at hand, and applying—or attempting to apply—the governmental-proprietary distinction to the outrageous conduct of the City disclosed by the record before us, it would appear that plaintiffs' tort action would not lie if the destruction was wrought by a repair crew from the city street department; it would lie if the crew worked for the municipal light plant; it would not lie if the crew worked for the city sewer department; it would lie if the crew came from the city gas department; it would not lie if the crew came from the park department or the zoo. Possible illustrations and variations are endless. We note that the record before us does not disclose the city department or agency, if any, by which the tree-cutters were employed. The City's unverified motion alleges that "the acts complained of in plaintiffs' petition are governmental in nature . . . ." The claim is not further explained.

Property is as completely destroyed, people are as seriously injured, losses are as great, whether caused by a street department employee, a municipal light plant employee, a sewer department employee, a gas serviceman, or a park, zoo, or sanitation worker. We can see no just reason for granting immunity to the municipality in the one instance and denying it in the other. Certainly the resulting impact on the injured person is not in anywise reasoned or fair.

We conclude that the rule that a municipality is not liable for the negligent acts of its officers and employees in the performance of a "governmental" function should be abolished. It does not promote justice, and serves no rational purpose.

In its stead, we hold that municipalities are immune from tort liability only for acts and omissions constituting the exercise of a legislative or judicial function, or constituting the exercise of an administrative function involving the making of a basic policy decision. This rule, adapted from Restatement (Second), Torts § 895 C (1973 Tent. Draft) does not establish liability for acts or omissions which are otherwise privileged or are not tortious. Instead, it places municipalities, for the most part, on an equal footing with individuals and corporate entities so far as responsibility for injuries or damage caused by negligence is concerned. We believe this rule will better serve the citizens of this state.

All prior opinions of this court in conflict with this decision are overruled.

The judgment of the district court is reversed.