No. 53,238

FRED CROSS, SR., *et ux., Appellants,* v. CITY OF KANSAS CITY, KANSAS
and KANSAS CITY, KANSAS BOARD OF PUBLIC UTILITIES, *Appellees.*

(638 P.2d 933)

Opinion filed
January 15, 1982.

*Donald W. Vasos,* of Scott, Daily & Vasos, of Kansas City, argued the cause and
was on the brief for appellants.

*Daniel B. Denk,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City,
argued the cause, and *Robert J. Watson,* city attorney, and *Annette Eslick,* assistant
city attorney, were with him on the brief for appellees.

*Neil R. Shortlidge,* first assistant city attorney, Overland Park, was on the brief
for the *amicus curiae,* League of Kansas Municipalities.

The opinion of the court was delivered by

HOLMES, J.: Plaintiffs Fred K. Cross and Zelma Cross, husband
and wife, appeal from an order of the district court sustaining a
motion for summary judgment by the defendants, City of Kansas
City, Kansas (City), and the Kansas City, Kansas Board of Public
Utilities (BPU).

Plaintiffs were the owners of a lumberyard business located in
the Argentine industrial district of Kansas City. On June 9, 1978,
the lumber warehouse and other property were destroyed by fire.
Upon discovery of the fire, the Kansas City Fire Department was
alerted and was on the scene within minutes. However, they were

unable to extinguish the fire due to inadequate water pressure and water supply. Plaintiffs allege that the proximate cause of their loss was the inadequate water supply caused by the negligence of the defendants in failing to properly manage, repair, inspect and maintain the city water system, and for the purpose of this appeal these allegations are deemed to be true. *Weil & Associates v. Urban Renewal Agency,* 206 Kan. 405, 479 P.2d 875 (1971). Plaintiffs also alleged breach of a contractual duty but that issue is not raised upon appeal.

Plaintiffs' action seeking to recover for the loss caused by the fire was filed against the City and the BPU on January 15, 1979. Defendants filed a joint answer on February 14, 1979, denying the allegations of negligence and breach of contract asserted by plaintiffs. Defendants also asserted the doctrines of comparative negligence and assumption of risk as defenses to plaintiffs' petition but made no reference to governmental immunity as a defense. Plaintiffs proceeded with extensive discovery including interrogatories to both defendants and five discovery depositions and finally, on February 3, 1981, after the case was set for trial, the defendants moved for summary judgment. The basis of the motion was that due to the doctrine of governmental immunity, as set forth in K.S.A. 1978 Supp. 46-902 and 46-902a, the plaintiffs had failed to state a claim upon which relief could be granted. The district court sustained the defendants' motion and plaintiffs have appealed.

Plaintiffs opposed the motion on the same grounds pressed in this appeal. Plaintiffs first contend that K.S.A. 1978 Supp. 46-902 and 46-902a are unconstitutional. Their second position is that, even if the statute is constitutional, the function of the defendants at issue in the case was proprietary in nature, and, therefore, not entitled to immunity. The final point is that regardless of the constitutionality of the statute, defendants waived or abandoned the defense of governmental immunity by failing to raise it at the proper time or in the proper manner.

At the outset we will address the last two points raised by the plaintiffs and in doing so presume for the purposes of such consideration that the statutes in question are constitutional.

K.S.A. 1978 Supp. 46-902(*b*) provided:

"Except as may be otherwise specifically provided by statute and except for causes of action based upon nuisance and, in the case of cities, actions based upon

negligent failure to correct defects in streets, local units of government shall be immune from liability and suit for torts committed by officers or employees of such local unit of government when engaged in a governmental function. The provisions of this section shall not affect, change or diminish any procedural requirement necessary for recovery from any local unit of government, nor shall it grant any immunity to a local unit of government when engaged in a proprietary function."

The statute was enacted and became effective May 16, 1978, and, by the provisions of K.S.A. 1978 Supp. 46-902a, expired July 1, 1979.

Plaintiffs contend that the functions of the defendants in furnishing water service are proprietary in nature, rather than governmental, and the immunity granted by the statute does not apply. Plaintiffs cite several authorities supporting their position, including *Hall v. City of Youngstown,* 15 Ohio St. 2d 160, 239 N.E.2d 57 (1968), wherein it is stated:

"It is a rather elemental conclusion that the utility of a hydrant stems from its connection with a water supply system. Its primary use is to make immediately available a supply of water for the extinguishment of fires. That supply is accessible only because [it is] piped to the hydrant area through water mains. The problem in this case, as we see it, is the question of where water supply (proprietary in nature) ends, and fire fighting (governmental in nature) begins. We believe it to be at the hydrant nozzle." p. 165.

Other jurisdictions have held that where the water system is maintained for dual purposes, both proprietary and governmental in nature, the municipality is not entitled to immunity. See *Malter, Aplnt. v. S. Pgh. Water Co., et al.,* 414 Pa. 231, 198 A.2d 850 (1964); *Lober v. Kansas City,* 74 S.W.2d 815 (Mo. 1934), and *City of Houston v. Bush,* 566 S.W.2d 33 (Tex. Civ. App. 1978).

However, our Kansas cases have held otherwise. In *Perry v. City of Independence,* 146 Kan. 177, 69 P.2d 706 (1937), the petition of the plaintiff alleged:

"[T]hat under the direction of the superintendent of the municipal waterworks system of the defendant city 'there was dug a ditch about 30 feet long and about 5 feet deep and four (4) feet wide, from near the north property line of East Locust street to the north curb line thereof, and that said ditch was located at a point about twelve (12) feet west of the west curb line of Fifteenth street. That at or near the north end of said ditch was a fire hydrant; that said ditch continued to remain open and unprotected from Monday, the 15th of July, 1934, until Saturday, the 21st day of July, 1934. That on the afternoon of Friday, the 20th day of July, 1934, at what hour plaintiffs do not know, city water from said fire hydrant or said pipes connected therewith was permitted to flow into said ditch to a depth of about 22 inches.' "

It was further alleged that the 20-month-old daughter of the plaintiffs fell into the ditch and drowned and that such death was the result of the negligence of the defendant. The district court sustained a demurrer to the petition and in affirming the trial court on the basis that the city was immune from negligence in the performance of a governmental function, we said:

"It cannot be doubted that a city may maintain a municipal water plant and operate it in a dual capacity. While the city is maintaining the water system for the use of its fire department it is performing a public governmental function and is not liable for the negligence of its officers or servants in the establishment or maintenance of such water system for the benefit of the fire department." p. 179.

See also *Rhodes v. City of Kansas City,* 167 Kan. 719, 208 P.2d 275 (1949). Charles S. Rhyne, in his recent comprehensive work on municipal law, *The Law of Local Government Operations* (1980), states:

"While there is authority to the contrary, the prevailing view is that there is no municipal liability for failure to supply water for fire protection." p. 1059.

The same author states at page 1055:

"A municipality also is not liable for a failure to provide adequate fire protection."

See also 57 Am. Jur. 2d, Municipal, School and State Tort Liability § 282-292; and Annot., 163 A.L.R. 348 (1946).

Plaintiffs, in an attempt to avoid the bar of governmental immunity, assert that the BPU is a separate entity from the City and attempt to make a distinction between the fire-fighting activities of the Kansas City Fire Department and the function of the BPU in furnishing water to the public and to the City for fire fighting, sewage disposal and other governmental functions. It is contended that the BPU, as a separate entity, is solely engaged in the proprietary function of furnishing water and electrical service to the City and the public and is not a local unit of government engaged in a governmental function. In *Board of Public Utilities v. City of Kansas City,* 227 Kan. 194, 605 P.2d 151 (1980), we said:

"The Board operates the water and electric plants in the name of the city to produce and supply the city and inhabitants with water and electric energy *as an agency of the city* . . . ." p. 198. (Emphasis supplied.)

Following that decision the Legislature, in 1980, amended K.S.A. 1979 Supp. 13-1223, to add *inter alia:*

"The board may sue and be sued but only in the name of and on behalf of the city

except it shall have no standing in any court as a party plaintiff in any litigation against the city."

The amendment, while allowing the BPU to sue and be sued, clearly sustains the position of the court that it is merely an agency of the City and therefore its functions are subject to the provisions of K.S.A. 1978 Supp. 46-902.

While we recognize that there is respectable authority to the contrary, we are of the opinion that a municipality or one of its agencies in the operation of a public waterworks, which also serves as the water supply for fire-fighting purposes, does so in a dual capacity and the furnishing of water for fire fighting is done in a governmental capacity and therefore falls under the cloak of immunity granted by the statute.

Plaintiffs' second point is that the defendants did not raise governmental immunity as an affirmative defense or avoidance under K.S.A. 60-208(c) or K.S.A. 60-212(b) and therefore have waived the defense. Plaintiffs rely upon *Weaver v. Frazee,* 219 Kan. 42, 547 P.2d 1005 (1976), for the proposition that if a defendant fails to assert an affirmative defense it has been waived. However, K.S.A. 60-212(h)(2) states:

"*A defense of failure to state a claim upon which relief can be granted,* a defense of failure to join a party under K.S.A. 60-219, and an objection of failure to state a legal defense to a claim *may be made in any pleading permitted or ordered under K.S.A. 60-207(a) or by motion for judgment on the pleadings, or at the trial on the merits.*" (Emphasis supplied.)

Traditionally, the immunity defense has been raised as a "failure to state a claim upon which relief can be granted" (see *e.g., Flax v. Kansas Turnpike Authority,* 226 Kan. 1, 596 P.2d 446 [1979]), or failure to "state facts sufficient to constitute a cause of action" (see *e.g., Perry v. City of Independence,* 146 Kan. 177), and should ordinarily be raised at the earliest possible opportunity. We conclude that even though the defense was not raised until shortly before trial, nearly two years after the action was commenced, that the defendants have not waived their right under the statute to assert the defense. However, in view of the untimely delay which has resulted in substantial discovery expense for plaintiffs which might have otherwise been avoided, we assess the costs on this appeal to the defendants pursuant to Rule 7.07 (228 Kan. liii). We pause here to note that present counsel was not the original counsel for the City and the BPU and that

upon their entering the case they promptly raised the issue of governmental immunity. The delay in doing so was occasioned by prior counsel and not the present counsel of record.

Next we turn to plaintiffs' attack upon the constitutionality of K.S.A. 1978 Supp. 46-902. In *Gorrell v. City of Parsons,* 223 Kan. 645, 576 P.2d 616 (1978), this court eliminated the judicially created distinction between governmental and proprietary functions when the liability for negligence of a municipality was at issue. The decision in *Gorrell* was handed down April 1, 1978, and almost immediately the Legislature enacted K.S.A. 1978 Supp. 46-902(*b*) and 46-902a as a stopgap measure reinstating immunity for local units of government when they were engaged in a governmental function. The statute was limited to the period from May 16, 1978, to July 1, 1979, and unfortunately for plaintiffs, their loss occurred during that time. The 1979 Legislature enacted a comprehensive tort claims act, K.S.A. 1980 Supp. 75-6101 *et seq.,* effective July 1, 1979, which, while generally waiving governmental immunity, incorporates numerous exceptions where immunity is, in effect, retained.

Plaintiffs contend that the interim legislation which sought to reestablish immunity for a limited period of time for local units of government when engaged in governmental functions is violative of the constitutional guarantees of equal protection and due process of law. We will not extend this opinion by once again reviewing the history and background of governmental immunity in Kansas. The subject has been treated exhaustively in prior opinions of the court and particularly in *Brown v. Wichita State University,* 217 Kan. 279, 540 P.2d 66 (1975), *aff'd in part and vacated in part,* 219 Kan. 2, 547 P.2d 1015 (1976). This court has repeatedly stated that the legislature has the authority to reimpose governmental immunity after elimination by the courts of judicially imposed immunity. Such authority is limited, however, to the extent that any such legislatively imposed immunity must pass constitutional muster.

It would serve no useful purpose to again rehash the pro and con arguments about the advisability of governmental immunity of any kind. What has been previously said in the two *Brown* opinions and our subsequent decisions adequately covers the constitutional arguments asserted by plaintiffs. Furthermore, a majority of this court is of the opinion that the limited application

of the statutes to the period from May 16, 1978, to July 1, 1979, does not constitute undue discrimination or result in the unconstitutionality of the statutes. All persons suffering loss within the purview of the statute during the statutory period are treated equally and there is no attempt to single out one small segment of a similar class of citizens as was the case in *Flax v. Kansas Turnpike Authority,* 226 Kan. 1, 596 P.2d 446 (1979). Suffice it to say we have carefully considered all of plaintiffs' constitutional challenges to the statutes in light of our prior decisions and hold that K.S.A. 1978 Supp. 46-902(*b*) and -902a do not violate plaintiffs' constitutional due process and equal protection rights and that the statutes are constitutional.

The judgment is affirmed with costs of the appeal assessed to the defendants.

HERD, J., dissenting: I respectfully dissent. Traditionally the furnishing of gas, water and electricity to consumers has been defined as a proprietary function of a municipality for which there is no governmental immunity. See *Brown v. Wichita State University,* 217 Kan. 279, 540 P.2d 66 (1975), *aff'd in part and vacated in part,* 219 Kan. 2, 547 P.2d 1015 (1976); *Carroll v. Kittle,* 203 Kan. 841, 457 P.2d 21 (1969); *Grover v. City of Manhattan,* 198 Kan. 307, 424 P.2d 256 (1967); *Wendler v. City of Great Bend,* 181 Kan. 753, 316 P.2d 265 (1957); *Krantz v. City of Hutchinson, et al.,* 165 Kan. 449, 196 P.2d 227 (1948); *Water Co. v. City of Wichita,* 98 Kan. 256, 158 Pac. 49 (1916); *Hinze v. City of Iola,* 92 Kan. 779, 142 Pac. 947 (1914). On the other hand, fire and police protection are governmental functions which are immune under K.S.A. 1978 Supp. 46-902(*b*). The reason for the distinction is readily apparent: furnishing gas, water and electricity are performed for profit while fire and police protection are for the protection of the public in general.

In the instant case the Board of Public Utilities of Kansas City is charged with performing the proprietary function of furnishing electricity and water to Kansas City residents for a profit. The board of public utilities performs no governmental functions. The effort to track either water or electricity to the ultimate consumer in order to determine from its use whether the function is proprietary or governmental is not sound. The reasoning that the duty to furnish water to the fire department is governmental is

just as faulty. The fire department performs the governmental function. The Board's responsibility is to furnish water, a proprietary obligation.

In light of our decision in *Gorrell v. City of Parsons*, 223 Kan. 645, 576 P.2d 616 (1978), K.S.A. 1978 Supp. 46-902(*b*) should be strictly construed against expanding immunity. I would hold the furnishing of water for fire protection a proprietary function (overruling *Perry v. City of Independence*, 146 Kan. 177, 69 P.2d 706 [1937]), adopt the reasoning of *Hall v. Youngstown*, 15 Ohio St. 2d 160, 239 N.E.2d 57 (1968), and reverse the trial court.

PRAGER and MILLER, JJ., join the foregoing dissent.