(657 P.2d 582)

No. 53,423

ROBERT C. DAUFFENBACH, *Appellant* and *Cross-Appellee*, v. CITY OF WICHITA, VICTOR CAWTHORN and ROBERT K. LEONARD, *Appellees* and *Cross-Appellants*.

Opinion filed January 20, 1983.

*Gerald L. Michaud,* and *Patrick J. Michaud,* of Michaud, Cordry and Michaud, Chartered, of Wichita, for appellant and cross-appellee.

*John Dekker,* city attorney, and *H. E. Jones* and *S. A. Issinghoff,* assistant city attorneys, for appellees and cross-appellants.

Before ABBOTT, P.J., STEVEN P. FLOOD, District Judge, assigned, and JOHN W. BROOKENS, District Judge retired, assigned.

ABBOTT, J.: This is an action for damages for personal injuries suffered by the plaintiff, Robert C. Dauffenbach, in an altercation with two officers of the Wichita Police Department. The defendants are the two police officers, Victor Cawthorn and Robert K. Leonard, and the City of Wichita. Dauffenbach was rendered a quadriplegic as a result of the injuries he sustained.

The case was tried to the court and judgment entered for the defendants. Dauffenbach appeals, contending that the force used

by the two officers in arresting him was excessive as a matter of law; that the force used by the two officers was likely to cause great bodily harm as contemplated by K.S.A. 21-3215; and that the trial judge used the wrong standard of proof in determining the defendants had no liability.

The defendants cross-appeal, contending the trial court erred in not striking Dauffenbach's amended petition because it claimed damages for ordinary negligence; that it also stated a cause of action on a theory (negligence) different from that (assault and battery) in the original petition; and it did not relate back to the date the original petition was filed as provided for in K.S.A. 60-215(c), because the statute of limitations for assault and battery is one year and it had run on the cause of action stated in the original petition.

How the injury occurred was disputed. The trial judge chose to believe the police officers' version, which was his prerogative. Thus we set forth the version accepted by the trial judge as to what occurred.

At approximately 3:30 a.m. on June 7, 1976, the two police officers were dispatched to an apartment building at 515 North St. Francis, Wichita, Kansas, where they apprehended two persons who were attempting to pry open the trunk of an automobile parked in the apartment building's parking lot. Dauffenbach owned the apartment building and occupied one of the apartments. The two police officers arrived at the scene in separate cars. One of the police vehicles partially blocked the driveway to the parking lot. The two officers and the two persons apprehended were in the vicinity of the police vehicle that was partially blocking the driveway. The police vehicle was on public property and one of its front doors was open. Dauffenbach arrived home at that moment and attempted to drive over the curb and past the police vehicle. In doing so, he struck the open door, causing very minor damage to the door; but the coat sleeve of one of the apprehended persons caught between the open door and Dauffenbach's car, and the impact ripped the coat sleeve and left an abrasion on the person's arm. Dauffenbach demanded in foul and abusive language that the officers get off his parking lot. He then drove his car to the rear of the parking lot, exited the vehicle and walked toward an approaching officer. The two met at approximately the center of the parking lot near a light pole.

Dauffenbach was never advised at any time prior to his being injured that he was under arrest. He was advised that he had been involved in an accident with a police vehicle which also involved a pedestrian who was a prisoner, and that the officer wanted to see his driver's license. Dauffenbach removed a credit card from his billfold and threw it at the officer. The officer picked it up from the ground, returned it to Dauffenbach and again requested his driver's license. Dauffenbach took his wallet from his pocket, opened it, and attempted to hand it to the officer. Dauffenbach was advised the officer could not handle his wallet and was requested to remove his driver's license from the wallet. Dauffenbach, making vile statements to the officer, turned and walked away. By this time, the second officer had arrived at the scene. Each officer took him by an arm and backed him against the light pole in the center of the parking lot. Dauffenbach was then advised of the accident with the police vehicle, that he might be drunk and that he must produce his driver's license. Dauffenbach acted as if he were reaching for his wallet, but when the officers released him he took a swing at Officer Cawthorn and missed. Dauffenbach was 58 years old, six feet one inch in height, and weighed 180 pounds. In the officers' opinion, Dauffenbach was intoxicated. Officer Cawthorn grabbed Dauffenbach's arm and struck him in the midsection at the belt line; Officer Leonard grabbed the other arm. Dauffenbach was backed up against the light pole and was again requested to produce his driver's license. Dauffenbach appeared to be cooperating and the officers again released their hold on him. Instead of producing his driver's license, Dauffenbach shoved Officer Cawthorn and drew back his arm as if to swing at the officer. Officer Leonard grabbed Dauffenbach's left arm, flipping Dauffenbach over his shoulder. Dauffenbach landed on his forehead on a rock-surfaced parking lot, from which he suffered the major injury of hyperextension of the neck superimposed on a preexisting hypertrophic spinal condition resulting in his paralysis. At the time of the confrontation between Dauffenbach and the two officers, Officer Leonard had on his person a gun and holster, an ebonite baton and a can of Mace. Officer Cawthorn had on his person a handgun and a baton.

Based on the above facts, the trial judge made the following conclusions of law:

"1. The defendant police officers were authorized to detain the plaintiff, to request his driver's license, and after being assaulted by him, were authorized to subdue and arrest him.

"2. The force used by the defendants in subduing the plaintiff was not 'deadly force' as contemplated by K.S.A. 21-3215, was not excessive, was not negligently applied, but was reasonable under the circumstances existing at the time.

"3. The injuries sustained by the plaintiff were not purposefully and intentionally applied and were neither contemplated nor intended.

"4. The defendant Officers Cawthorn and Leonard acted in good faith and without malice in the premises.

"5. The defendants were not negligent in the premises and, therefore, all the defendants herein are entitled to judgment on the issue of liability.

"6. A peace officer is presumed to have acted properly until said presumption is overcome by clear and convincing evidence.

"7. In addition, a peace officer is the judge of the force to be employed under the circumstances and he will not be deemed to have exercised excessive force unless it appears that he abused his power and authority.

"8. Plaintiff has failed to carry the burden of proof that the force used was excessive or abusive.

"9. Having determined that the force used by the defendants was justified, not excessive, not abusive, not negligent, and reasonable under the circumstances, and that the defendants should have judgment herein, it is unnecessary for this court to determine whether or not the comparative fault statutes of the State of Kansas apply to the facts in this case; however, the Court finds, as a matter of law, that the plaintiff's own negligence was to such a degree that had the defendant police officers been negligent, the plaintiff would nonetheless be barred from recovery herein.

"10. The Court generally then finds for the defendants and against the plaintiff on all of the issues herein."

Before turning to the issues presented by Dauffenbach's appeal, we will dispose of the defendants' cross-appeal. Dauffenbach filed his action on April 13, 1978, requesting actual and punitive damages. A motion to amend the petition to add a third count alleging a civil rights violation based on 42 U.S.C. § 1983 was filed and granted. An amended petition was filed on November 10, 1980. It alleged three counts, one for negligence, one for civil rights violations under 42 U.S.C. § 1983 and one for negligence against the City of Wichita based on its failure to train and supervise its police officers. The City of Wichita filed a motion to strike, alleging the amended petition was changed from that which the trial court had previously authorized and further that Dauffenbach was attempting to change the theory of his suit to the defendants' prejudice. The trial judge cited *Brooks*

*v. Dietz,* 218 Kan. 698, 545 P.2d 1104 (1976), as authority and concluded that if the amended petition did set forth new or different claims, they arose out of the conduct, transaction or occurrence set forth in the original petition. He overruled defendant's motion to strike, and allowed Dauffenbach's first amended petition to be filed.

Whether to allow an amended petition to be filed lies within the sound discretion of the trial judge. The issue was presented and the trial court had discretionary authority to allow an amended petition, irrespective of whether the pleading filed had or had not been previously authorized. *Key v. Clegg,* 4 Kan. App. 2d 267, Syl. ¶ 2, 604 P.2d 1212, *rev. denied* 227 Kan. 927 (1980). As we view Dauffenbach's original petition, it states a cause of action for negligence under K.S.A. 60-208(*a*). He contends the defendants did "negligently assault, beat and injure" him and that any "negligence" on the part of the officers "is likewise the negligence" of the city. The trial court did not err in allowing the amended petition to be filed. *Stricklin v. Parsons Stockyard Co.,* 192 Kan. 360, 365-66, 388 P.2d 824 (1964).

In considering Dauffenbach's arguments, we note this cause of action accrued prior to the effective date of the Kansas Tort Claims Act, K.S.A. 1981 Supp. 75-6101 *et seq.,* and is subject to the rules enumerated in *Thome v. City of Newton,* 229 Kan. 375, 624 P.2d 454 (1981), and *Gorrell v. City of Parsons,* 223 Kan. 645, 576 P.2d 616 (1978). The *Gorrell* case abolished municipal immunity for the negligent acts of its officers or employees in the performance of a governmental function. In *Gorrell,* Justice Miller pointed out that the Supreme Court's change in position "does not establish liability for acts or omissions which are otherwise privileged or are not tortious. Instead, it places municipalities, for the most part, on an equal footing with individuals and corporate entities so far as responsibility for injuries or damages caused by negligence is concerned." 223 Kan. at 650. In *Thome,* the Supreme Court stated that the abolishment of governmental immunity for simple negligence would not constitute a bar to any other appropriate defense. 229 Kan. at 380.

The question in this case is not immunity, but whether a tort was committed. That an injury occurs as a result of an action taken by a municipal employee is not per se a tort. The applicable law must be applied to the facts in each case to determine tort

liability. Here we have two questions concerning whether the trial judge applied the correct law to the facts.

The trial judge presumed that a law enforcement officer acts properly in the amount and type of force used unless the presumption is overcome by clear and convincing evidence. The defendants here argue the trial judge found them free of negligence, and the conclusions of law that the presumption must be overcome by clear and convincing evidence is mere surplusage. We cannot agree, and conclude that if that standard is incorrect then a new trial must be ordered.

Defendants contend that mere negligence, without malice or wanton or gross misconduct, does not render a law enforcement officer liable for damages for acts committed within the scope of his or her employment, and cite *Hendrix v. City of Topeka,* 231 Kan. 113, 643 P.2d 129 (1982); *Commercial Union Ins. Co. v. City of Wichita,* 217 Kan. 44, 536 P.2d 54 (1975); *Kern v. Miller,* 216 Kan. 724, 533 P.2d 1244 (1975); *Murphy v. City of Topeka,* 6 Kan. App. 2d 488, 630 P.2d 186 (1981). We deem those cases to be not applicable to the facts in this case. Those cases deal with administrative acts as opposed to acts of negligence resulting in personal injuries, or with exceptions to governmental immunity.

The general rule is that a law enforcement officer who is making an arrest for a misdemeanor committed in his or her presence has the right to use reasonable force to effect the arrest. The officer has discretion to determine the degree of force required under the circumstances as they appear to the officer at the time. The reasonableness of the force used is a question for the trier of facts. The test to determine the actual amount of force necessary is not one of hindsight. The degree of force used may be reasonable even though it is more than is actually required. The officer may not, however, use an unreasonable amount of force or wantonly or maliciously injure a suspect. For a general discussion on the subject, see Annot., Arrest of Misdemeanant—Intentional Force, 83 A.L.R.3d 238. See also *Lewis v. Marmon,* 8 Kan. App. 2d 277, 655 P.2d 953 (1982).

Defendants rely on foreign cases to support the trial court's conclusion of law that a peace officer is presumed to have acted properly until that presumption is overcome by clear and convincing evidence. See, *e.g., Wirsing v. Krzeminski,* 61 Wis. 2d 513, 213 N.W.2d 37 (1973). Those cases, in our opinion, repre-

sent the minority view. 83 A.L.R.3d at 248-49. The comment *a* to Restatement (Second) of Torts § 132 (1965) states in essence that an officer is not liable unless the force used is "clearly excessive." We do not construe that comment to mean that an officer is entitled to a presumption that the force he or she uses is reasonable and that it takes clear and convincing evidence to overcome that presumption.

The nature and importance of the functions of a law enforcement officer in investigating criminal activity and in making arrests is important to the general public. Conversely, the public should be protected from overreaction by law enforcement officers. It is not the duty of a law enforcement officer to punish a suspect by using unreasonable force or to wantonly or maliciously injure the suspect. A public citizen should be compensated when unreasonable force by a law enforcement officer causes an injury whether the injured party is a pillar of the community, an incoherent drunk or mentally ill. We see no reason to make a distinction between a traffic accident which involves a vehicle driven by a law enforcement officer (or the felling of a tree) and the unreasonable use of force in making an arrest.

We believe the general rule best serves society's interests and is most consistent with legislative intent as expressed in K.S.A. 21-3215(1). The conclusion of law that Dauffenbach failed to carry the burden of proof that the force used was excessive or abusive was based on the trial judge's conclusion that a peace officer is presumed to have acted properly until that presumption is overcome by clear and convincing evidence. The latter conclusion permeates all the trial judge's other conclusions of law concerning liability, and a new trial with the burden of proof to be a preponderance of the evidence is required.

Dauffenbach argues that under the facts of this case K.S.A. 21-3215 does not permit a law enforcement officer who is making an arrest for a misdemeanor to use such force as is likely to cause death or great bodily harm, but that the force used here was likely to and did cause great bodily harm as a matter of law. As we view K.S.A. 21-3215(1), it follows the majority rule concerning arrests of misdemeanants. It allows a law enforcement officer to use any force he or she believes necessary to effect an arrest, but prohibits the use of force which is likely to cause death or

great bodily harm except to prevent death or great bodily harm to the officer or another person (the effect is a liberalized self-defense rule), or unless the suspect is attempting to escape by the use of a deadly weapon or otherwise indicates he or she will endanger human life or inflict great bodily harm unless arrested without delay. The purpose of the statute is to set limits for law enforcement officers, and if the limits are observed an officer has a defense in a criminal action. We see no reason why the civil liability of a law enforcement officer should not be coextensive with his or her criminal liability.

Dauffenbach argues that the officer, using a jujitsu hold, grabbed Dauffenbach's arm and threw him over the officer's shoulder. The officer did not release Dauffenbach's arm until Dauffenbach struck the ground. The parking lot was covered with rock. The police officers' testimony indicated they thought Dauffenbach was drunk and incapable of harming them. In addition to examining the trial transcript, we have viewed the video tape reenactment made by the defendants shortly after the incident.

Generally it is a question of fact whether the force used is likely to cause death or great bodily harm, and we cannot say as a matter of law that the force used here was likely to cause great bodily harm and thus was negligence per se.

Reversed and remanded with directions.

BROOKENS, District Judge retired, assigned, dissenting: A law enforcement officer, peculiarly among all public officials, often suffers verbal abuse, threatened or actual physical abuse, as in this case, and under these circumstances is required by law to be an aggressor without time or opportunity for reflection. It seems to me the law is, and ought to be, that a law enforcement officer is presumed to have acted in good faith, is presumed to have acted properly, and is presumed to have used reasonable force under the circumstances then existing. He should not be held liable unless the force used is clearly excessive.

I would require clear and convincing evidence, not a mere preponderance of the evidence, to overcome what I believe is the necessary presumption. *Wirsing v. Krzeminski,* 61 Wis. 2d 513, 213 N.W.2d 37 (1973); Restatement (Second) of Torts § 132 (1965), comment *a.* Under this standard, the trial court's findings and conclusions are supported by substantial evidence, and should be affirmed.