NOT DESIGNATED FOR PUBLICATION

No. 115,062

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DOUGLAS KLING,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed January 5, 2018. Affirmed.

*Douglas A. Kling*, appellant pro se.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE, J., and MERLIN G. WHEELER, District Judge, assigned.

PER CURIAM: Impatient from having to wait for a grievance form, Hutchinson Correctional Facility prisoner Douglas Kling struck a corrections officer several times. His jury found him guilty of battery on a law enforcement officer—a felony. There are two issues to be resolved in this appeal. The threshold issue is whether the case must be dismissed because Kling was not brought to trial within the 180-day period set by the Uniform Mandatory Disposition of Detainers Act. The second issue is whether we should reverse Kling's conviction because the trial court refused his request to instruct the jury

1

on self-defense. For the reasons we state in the opinion, we deny the appeal and affirm Kling's conviction.

*The prison staff was not moving as quickly as Kling wanted.*

At 2 a.m. on March 26, 2014, while he was housed in an isolation cell within the clinic of the prison, Kling requested a grievance form to get medication. About 45 minutes after he asked for the form, Kling made a second request for the form. The surveillance video shows that Kling began kicking the door of his cell. (The video in the appellate record has no audio.) He stood with his back to the door, raised his leg, and then forcefully swung it backward, kicking the door several times with his heel. Shortly after Kling stopped kicking the door, Officer Jayson Garcia opened the door of Kling's cell.

Officer Garcia entered the cell and began talking with Garcia. When Officer Garcia was leaving the isolation cell and tried to close the door, Kling followed him out of the cell. As soon as Kling crossed the threshold of the cell, Officer Garcia pushed him back into the cell. After this first push, Kling returned to the doorway and Officer Garcia pushed Kling a second time. A struggle ensued with both men hitting each other. The two left the isolation cell and the fight continued in the hallway outside the range of the surveillance camera in the cell.

While the two were fighting in the hallway, nurses in the clinic called for a response team. The team arrived and subdued Kling. At the time the response team arrived, Garcia was holding onto Kling's waist, pressing him against a wall.

Officer Garcia's face was bleeding and he received medical attention for his injuries. Kling had minor injuries and a chunk of his hair had been pulled out.

The State charged Kling with battery on a law enforcement officer under K.S.A. 2013 Supp. 21-5413(c)(3)(A). After he was charged, Kling claims that on September 4, 2014, he filed a disposition of detainer request under the Uniform Mandatory Disposition of Detainers Act, K.S.A. 22-4301 et seq.

Kling represented himself throughout these proceedings. At the preliminary hearing on January 12, 2015, Kling reaffirmed his desire to represent himself. After he was bound over for trial, the State requested an immediate arraignment due to the Detainers Act request it had received. The district court, however, did not arraign him at that time because it had not received Kling's Detainers Act request.

Prior to trial, Kling filed a motion to dismiss because he was not brought to trial within 180 days of making his Detainers Act request; thus, preserving the issue for appeal. The trial court denied this motion because it had not received any Detainers Act request. On the morning of trial, Kling renewed his motion to dismiss, presenting documents that he claimed supported a finding that he properly initiated a Detainers Act request. The trial court found that the documents did not show that he had properly initiated a Detainers Act request. Because the trial court had not received Kling's request, it once again denied Kling's motion to dismiss. In the alternative, the trial court agreed with the State that the 180-day period had not yet expired because Kling had agreed to delay the preliminary hearing from November 12, 2014, to January 12, 2015. Due to this delay, which the court found was attributable to Kling, the 180-day period had not expired. The case proceeded to a jury trial on April 7, 2015.

At the close of evidence, Kling requested a self-defense jury instruction. The court denied his request, stating the facts did not support giving such an instruction. The jury convicted Kling. The court sentenced him to 122 months in prison followed by postrelease supervision for 24 months, to be served consecutive to the sentence he was already serving.

3

*Was Kling brought to trial outside the statutory limit?*

As a prisoner in the custody of the Secretary of Corrections, Kling is entitled to the protections of the Detainers Act. The Detainers Act is a law that provides a way for an inmate to request the disposition of any pending criminal charges against the inmate. The inmate makes the request and then the prison officials and the State must take timely steps to dispose of the charges.

Specifically, the Detainers Act provides that any inmate who is in the custody of the Secretary of Corrections may request final disposition of any untried indictment, information, motion to revoke probation, or complaint that is pending against that inmate. K.S.A. 2016 Supp. 22-4301(a). After the request is made, the Secretary of Corrections must promptly send by registered or certified mail, return receipt requested, one copy of the request to the court and one copy to the county attorney to whom it is addressed. Along with the request, the statute requires the secretary to certify the term of commitment under which the inmate is being held. K.S.A. 2016 Supp. 22-4302. Once the county attorney and the district court receive the request and certificate, the State's failure to bring the charges to trial within 180 days deprives the district court of jurisdiction, subject to certain statutory exceptions. K.S.A. 2016 Supp. 22-4303. In that event, the untried indictment, information, motion to revoke probation, or complaint shall be dismissed. Thus, the Legislature has created a speedy trial right for all prisoners complying with the statute.

The issue in this case is that the district court never received Kling's Detainers Act request or any certification from the Secretary of Corrections. The question of whether this error rests on Kling or upon the State largely depends on the facts. Once an inmate has properly invoked protections of the Detainers Act through the written request, the burden shifts to the prison official to send that request. *Pierson v. State*, 210 Kan. 367,

4

373-74, 502 P.2d 721 (1972). Accordingly, we must determine whether Kling properly initiated his Detainers Act request.

In *Pierson*, the Detainers Act's protections were properly invoked when there was clear evidence that the inmate had signed a written request for final disposition of his detainer addressed to the court and county attorney, and delivered the request to the proper officials. The burden then shifted to the prison officials. Because the inmate was not tried within 180 days of his request, dismissal was required. 210 Kan. at 373-74.

The Detainers Act requires that "[t]he request shall be in writing, addressed and delivered to the court in which the indictment, information, motion to revoke probation or complaint is pending, to the county attorney charged with the duty of prosecuting it and to the secretary of corrections." K.S.A. 2016 Supp. 22-4301(a). Under the rationale of *Pierson*, the burden shifts to the prison official when there is evidence that the inmate complied with this provision and the 180-day period of K.S.A. 2016 Supp. 22-4303 begins running upon the request.

There is no clear evidence in this record that Kling properly initiated his request. Kling presented some documents that allegedly supported his claim that he properly initiated his request. The district court reviewed the documents and stated:

> "When I look at these documents I see a copy of a mail request from you, but nothing about these two documents confirms that there was the actual written detainer disposition request submitted to the court. I see your writing saying that the reason for the mailing is the detainer disposition request but the actual document is not part of the exhibit."

Although the court noted that it would mark the documents as exhibits so they would be in the court file, they are not in the appellate record. Kling bears the burden to provide a record sufficient to show an error occurred. *State v. Sisson*, 302 Kan. 123, 128,

351 P.3d 1235 (2015). Without these documents in the record, we cannot assess whether the district court's view of Kling's exhibits was erroneous. Additionally, without these documents or a copy of Kling's request, it is not possible to determine whether he properly initiated his request under 22-4301(a).

But one point is clear. At the preliminary hearing, the county attorney requested an immediate arraignment because he had received Kling's request. Although this provides some support that Kling properly initiated his request, it does not show that he properly addressed a written request to the district court. At a minimum, evidence that Kling addressed a written request to the district court is required to shift the burden to the prison officials to begin the 180-day period. See *Pierson*, 210 Kan. at 373-74. Because the record lacks evidence that Kling addressed a written request to the district court, the court did not err in finding his speedy trial rights were not violated and then denying his motion to dismiss.

Without evidence that Kling properly began his Detainers Act request by providing the written request addressed to the proper parties under 22-4301(a), this appellate record is insufficient to support Kling's claim of error.

But even if we held that Kling had presented sufficient evidence to shift the burden onto the prison officials, which would start the 180-day period, Kling has not shown that the district court erred. Even if Kling had properly requested the disposition of detainer, this court cannot conclude the district court erred in refusing to dismiss Kling's case. Excluding the period from the first appearance on November 12, 2014, to the preliminary hearing on January 12, 2015, the State brought Kling to trial within 149 days.

Again, we are hampered by a lack of a record. The record is not clear whether a continuance was granted. The State's argument is based upon Kling agreeing to postpone

6

the preliminary hearing to discuss a plea with the county attorney. The hearing where Kling allegedly agreed to the delay occurred on November 12, 2014. There is no transcript in the record from this hearing.

The dates of the hearings and actions in the case are important. The county attorney received Kling's disposition of detainer request on September 9, 2014. The alleged delay began on November 12, 2014. The State alleges that the time between the continuance and the preliminary hearing on January 12, 2015, should not count towards the 180-day period for speedy trial under the Detainers Act. Kling's trial began on April 7, 2015. If the period between November 12, 2015, and January 12, 2015, is not counted for the 180-day requirement, the State brought the charges to trial in a timely manner—149 days. If that period is not counted against Kling, the State brought the case to trial outside of the 180-day requirement—208 days.

Without the transcript from the hearing, it is impossible to determine if the time between the November 12, 2014 hearing and the January 12, 2015 hearing should be considered a continuance or delay to which Kling agreed. The burden was on Kling as the appellant to designate the record sufficient to show he is entitled to relief from the claimed error. Without a properly designated record, the appellate court presumes the action of the district court was proper. See *Sisson*, 302 Kan. at 128. Here, the district court determined that the time should not be counted toward the 180-day period because Kling agreed to the delay. With no record that shows to the contrary, we must presume the district court was proper in reaching the conclusion that the delay was agreed to by Kling.

*The court properly refused to give the self-defense instruction.*

Our Supreme Court has directed an orderly review of claims of jury instruction error. We must decide if the claim has been preserved for review; if it has, then consider

7

the merits of the claim; and finally, if there is an error, then decide if it is harmless. *State v. Phannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015). Since Kling preserved the issue by requesting the self-defense instruction at trial, we will consider the merits of Kling's claim. In our view, giving the instruction was not factually appropriate here.

Generally, a criminal defendant is entitled to a jury instruction on the law applicable to the theory of defense if the jury instruction would be factually appropriate. An instruction is factually appropriate if there is sufficient evidence *when viewed in the light most favorable to the defendant* for a rational fact-finder to find for the defendant on that theory. *State v. Dupree*, 304 Kan. 377, 397, 373 P.3d 811 (2016).

In order for a self-defense jury instruction to be factually appropriate there must be some evidence presented at trial that would satisfy both parts of a two-part test for self-defense as described in K.S.A. 2016 Supp. 21-5222. The statute states: "A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force." K.S.A. 2016 Supp. 21-5222(a).

Thus, self-defense has a subjective and an objective requirement. The subjective component requires the defendant to have a sincere and honest belief that it was necessary to use force to defend himself or herself. Then, the objective component requires the defendant to show that a reasonable person in the circumstances would have believed self-defense was necessary to defend himself or herself. *State v. McCullough*, 293 Kan. 970, 975, 270 P.3d 1142 (2012).

When viewing the evidence in the light most favorable to Kling, he presented sufficient evidence to satisfy the subjective component for giving the instruction since he perceived that Officer Garcia was going to continue to attack him. And Kling had a

8

sincere and honest belief that it was necessary to use force to stop the attack from the officer. Kling's testimony could lead a rational fact-finder to find in favor of his theory. Thus, whether a self-defense instruction was factually appropriate here depends on whether there is sufficient objective evidence that would call for giving this instruction. This is where Kling's claim falls short.

This question boils down to whether there was any evidence of "imminent use of unlawful force" that would allow a rational fact-finder to find that self-defense was called for as set out in K.S.A. 2016 Supp. 21-5222(a). We think not.

The law recognizes the unique role of law enforcement officers in our society. A law enforcement officer is entitled to use reasonable force to make an arrest. K.S.A. 2016 Supp. 21-5227. Thus, self-defense is usually inapplicable when resisting an identified, uniformed law enforcement officer. *City of Wichita v. Cook*, 32 Kan. App. 2d 798, 801, 89 P.3d 934 (2004). The right to use reasonable force also applies to correctional officers in preventing escapes, apprehending escapees, and maintaining security, control, and discipline in a correctional institution. See K.A.R. 44-5-106(a). It follows then, that in a custodial setting, where the alleged person using unlawful force is a uniformed law enforcement officer, a person's entitlement to claim self-defense is limited. *State v. Smith*, No. 112,728, 2016 WL 3365747, at *4-6 (Kan. App. 2016) (unpublished opinion). But this right of law enforcement officers to use force has limits.

Caselaw recognizes that self-defense is available when an officer uses excessive force. *State v. Heiskell*, 8 Kan. App. 2d 667, 672, 666 P.2d 207 (1983). Excessive force is not simply more force than is required, but rather an unreasonable amount of force in light of the circumstances, or force that is used wantonly and maliciously to injure the person. See *Dauffenbach v. City of Wichita*, 8 Kan. App. 2d 303, 308, 657 P.2d 582, *aff'd* 233 Kan. 1028, 667 P.2d 380 (1983).

9

The video of this prisoner/officer encounter provides the evidence. Officer Garcia initially pushes Kling back into his cell after Kling had begun to exit his cell. Then, Kling proceeds towards the door of the cell again, and the officer pushes him back a second time. When Kling moves towards the door a third time, Officer Garcia pushes Kling back onto the bed in the cell. After this, Kling stands up and begins punching Garcia. At trial, after watching the video, Officer John Markus stated that Officer Garcia's use of force was not out of line. Other than Kling's own opinion testimony, Kling presented no other testimony or evidence that Garcia's use of force was unreasonable.

Based upon the video alone, a rational fact-finder would not be able to conclude the officer's use of force was unreasonable. Testimony and photographs show that Kling's movement was into a restricted area where prisoners were not allowed to be without permission. The officer's initial push was reasonable in light of the circumstances to make sure that Kling did not exit his cell. The second push was a reasonable use of force because Kling made a second attempt to exit his cell. The third push was also a reasonable use of force to allow Officer Garcia to close the cell door.

When Kling begins punching the officer after the third push, Officer Garcia's attempts to subdue Kling are reasonable in light of the circumstances. There is no evidence to support a conclusion that the amount of force was unreasonable or wantonly and maliciously used with the intent to injure Kling. After Kling throws the first punch, Officer Garcia's attempts to subdue Kling are a reasonable use of force. Thus, there is not sufficient evidence for a rational fact-finder to conclude that there was an imminent use of unlawful force, making the requested self-defense instruction factually inappropriate.

The district court did not err by refusing to give Kling's requested self-defense instruction. Because there is no error, we need not decide whether the claimed error is harmless.

10

Affirmed.