NOT DESIGNATED FOR PUBLICATION

No. 117,455

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRADLEY VERSTRAETE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Pratt District Court; FRANCIS E. MEISENHEIMER, judge. Opinion filed July 27, 2018. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., STANDRIDGE, J., and RYAN W. ROSAUER, District Judge, assigned.

PER CURIAM:  Bradley Verstraete appeals his convictions for attempted second-degree murder and aggravated assault of a law enforcement officer. Verstraete challenges the district court's decision to allow the jury to consider evidence of a prior encounter he had with law enforcement, as well as the district court's failure to provide a lesser included offense instruction. Verstraete also argues the cumulative effect of these two trial errors deprived him of a fair trial. Finding no error, we affirm.

1

On the evening of January 31, 2015, the Pratt Police Department received a call reporting a noise disturbance at an apartment complex. Officer Kenneth Wright was the first to respond. When he arrived at the complex, he saw Verstraete outside holding an axe handle over his shoulder; Wright thought it was a baseball bat. When Wright approached, Verstraete reported that people were chasing him. Wright told Verstraete he was a police officer, asked Verstraete's name, and requested Verstraete put down the bat so they could talk. Verstraete said he would put the bat down once they got into his apartment. Wright told Verstraete that they could not talk in the apartment until another officer arrived.

Shortly thereafter, Sergeant James Ferbert arrived. He saw Verstraete standing in the parking lot holding a fixed-blade knife in his left hand and the axe handle over his right shoulder. When Ferbert got out of his car and approached, Verstraete asked Officer Wright who Ferbert was; Wright told him that Ferbert was another officer who was there to assist. Wright and Ferbert continued to ask Verstraete to put down his weapons, but Verstraete refused and again told the officers he would put them down once he was in his apartment.

Sergeant Ferbert testified at trial it was at this point that Verstraete turned and took one or two steps toward him. Ferbert became nervous and removed the taser from his holster. Officer Wright pulled out his sidearm. The officers continued to request that Verstraete drop his weapons in an attempt to deescalate the situation. But Verstraete held on to the axe handle and knife as he started walking toward his apartment. Verstraete told the officers he would let them in the apartment, and he would put the weapons down inside. The officers followed Verstraete, shouting at him not to go in the apartment and to drop his weapons. Verstraete ignored the commands.

Both officers testified they did not want Verstraete to enter the apartment because they feared other people or additional weapons could be inside. When Verstraete moved to open the apartment door, Sergeant Ferbert tased Verstraete. Verstraete fell to the ground. Before the officers were able to clear the weapons and place Verstraete in custody, Verstraete stood back up with the knife in his left hand and the axe handle in his right hand, swinging both weapons and moving toward the officers. The officers backed away from him. Officer Wright testified that Verstraete ran toward Sergeant Ferbert. Sergeant Ferbert repeatedly tased Verstraete but to no effect. The officers continued to yell, "Drop the knife, drop the bat," but Verstraete refused. As Verstraete closed in on Sergeant Ferbert with the knife and axe handle, Ferbert ordered Wright to shoot. Wright fired one shot at Verstraete. Verstraete spun around and fell to the ground, dropping the knife.

Believing Verstraete was shot, the officers again approached Verstraete to clear the weapons, secure the scene, and render medical aid.[1] When Officer Wright was within three to four feet, Verstraete grabbed the axe handle and started to stand up and swing it. Wright backed up and pointed his firearm on Verstraete. Wright testified that Verstraete ran toward him, swinging the axe handle, and yelling, "I'm going to fucking kill you." Wright continued to back away from Verstraete. A witness a block away saw Verstraete make "a football kind of move where you go and try to rush somebody." When Verstraete was within about six feet, Wright shot him in the chest. Verstraete fell to the ground and appeared lifeless. The officers approached, cleared the weapons, handcuffed Verstraete, and radioed dispatch to send medical assistance.

[1]The officers later learned that the bullet did not hit Verstraete but only hit the Gatorade bottle Verstraete was holding.

Although he sustained life-threatening injuries, Verstraete recovered. The State charged Verstraete with two counts of attempted second-degree murder (one each against

Sergeant Ferbert and Officer Wright) and two alternate counts of aggravated assault on a law enforcement officer.

The jury convicted Verstraete of attempting to murder Officer Wright and assaulting Ferbert with a deadly weapon. The district court sentenced Verstraete to 102 months in prison.

ANALYSIS

On appeal, Verstraete claims the district court erred by (1) allowing the State to introduce testimony about his prior interactions with law enforcement and (2) failing to provide the jury with an instruction on the lesser included offense of attempted voluntary manslaughter, imperfect self-defense. We address each of Verstraete's claims in turn.

*Prior police encounter*

Verstraete claims the district court erred by allowing the State to introduce evidence of a prior bad act committed by him. To give context to Verstraete's claim, we find it helpful to provide some background information.

Before trial, the State filed a motion asking permission to introduce evidence of a prior violent interaction between Verstraete and law enforcement officers. The prior incident occurred in the city of Hutchinson, which is located in Reno County, Kansas. Hutchinson Police Department officers responded to a call from two people who said Verstraete lived in their basement. The callers told dispatch that Verstraete was drinking vodka and exhibiting concerning behavior. Four officers entered the basement to find Verstraete sitting on an air mattress with a machete next to him. When the officers identified themselves, Verstraete picked up the machete and swung it toward the officers. The officers repeatedly ordered Verstraete to drop the weapon, but he ignored them. One

4

officer tased Verstraete. Although Verstraete fell to his knees as a result of being tased, Verstraete continued swinging the machete. After a physical tussle, the officers gained control of the machete and subdued Verstraete.

In support of its request for permission to introduce the details of this prior interaction between Verstraete and the Hutchinson police officers, the State argued that the past incident was relevant to establish elements of the crimes at issue; specifically, whether Verstraete had the intent to kill the officers and whether he knowingly placed the officers in apprehension of immediate bodily harm. The State ultimately withdrew its motion to introduce the details of Verstraete's prior interaction with the Hutchinson police. At trial, however, the State requested permission under K.S.A. 2017 Supp. 60-455 to have Officer Wright and Sergeant Ferbert testify to statements made to them by Verstraete about this prior interaction with Reno County law enforcement. The district court granted the State's request to introduce Verstraete's statements:

> "I think it does show knowledge that he was dealing with law enforcement officers. I'd also think that as part of the—essentially what we used to call res gestae, it's part of the act of the case, what happened. And it does not—certainly, I'm not granting leave to bring in details about what happened at a prior time in Reno County, but as to his statement, I will think that is admissible on those two grounds and I'll grant the motion."

The court reiterated that it was "not allowing any independent evidence of a prior act in Reno County, simply his reference as part of the facts of this case to the Reno County officers."

Relying on K.S.A. 2017 Supp. 60-455, Verstraete argues the statements he made to Officer Wright and Sergeant Ferbert about Reno County law enforcement were inadmissible evidence of prior bad acts.

5

K.S.A. 2017 Supp. 60-455 provides:

"(a) Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.

"(b) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

K.S.A. 2017 Supp. 60-455 provides an exception to the general rule that all relevant evidence is admissible. K.S.A. 60-407(f). If proffered evidence does not suggest the commission of a prior crime or civil wrong, then 60-455 does not apply and the evidence is presumed to be admissible so long as it is relevant and not excludable on some other basis. See *State v. Perrigo*, 10 Kan. App. 2d 651, 651-52, 708 P.2d 987 (1985). The evidence identified by Verstraete as inadmissible prior bad acts under 60-455 consists of three statements made by Verstraete to Officer Wright and Sergeant Ferbert during the altercation: (1) "If you were Reno County [law enforcement], you would have tackled me by now," (2) "Reno County would have tased me already," and (3) "[I]f it was Reno County, it would take about six to eight cops to tackle [me]."

The statements Verstraete made to Officer Wright and Sergeant Ferbert do not qualify as evidence of a prior crime or civil wrong under K.S.A. 2017 Supp. 60-455. First, the statements only provide Verstraete's opinion about Reno County law enforcement; nothing in these statements refer to an interaction between Verstraete and Reno County law enforcement. And even if the statements did establish Verstraete had personal experience interacting with Reno County law enforcement in the past, prior interaction with law enforcement falls far short of evidence that he committed a crime or civil wrong on a specified occasion. Because Verstraete suggests no other reason to

6

exclude the statements he made to Officer Wright and Sergeant Ferbert, the evidence is presumed to be admissible.

*Lesser included offense instruction*

Verstraete next argues that the district court erred in failing to instruct the jury on attempted voluntary manslaughter based on imperfect self-defense, a lesser included crime of attempted second-degree murder. When analyzing jury instruction issues, appellate courts make three determinations: (1) whether the court can review the issue, (2) whether any error occurred, and (3) whether any error requires reversal. *State v. Barber*, 302 Kan. 367, 376, 353 P.3d 1108 (2015).

With regard to reviewability, Verstraete did not object to the omission of the attempted voluntary manslaughter instruction at trial. Ordinarily, an appellant may not challenge an issue that was not preserved for appeal. But there is a special rule for jury instructions, including lesser included crime instructions: This court will review those challenges for clear error. See K.S.A. 2017 Supp. 22-3414(3).

With regard to error, we consider whether the instruction was legally and factually appropriate based on the record as a whole. *State v. Williams*, 295 Kan. 506, Syl. ¶ 4, 286 P.3d 195 (2012). Legal appropriateness is whether the instruction fairly and appropriately states the applicable law. We review the legal question using an unlimited standard of review. *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012). Attempted voluntary manslaughter is a lesser included offense of attempted second-degree murder. *State v. Fisher*, 304 Kan. 242, 257-58, 373 P.3d 781 (2016). So the instruction was legally appropriate.

The parties dispute whether the instruction was factually appropriate. District courts have a duty to issue instructions on any lesser included offense established by the

evidence, even if the evidence is weak or inconclusive. See K.S.A. 2017 Supp. 22-3414(3). If, after reviewing the evidence in the light most favorable to Verstraete, we are convinced that a rational fact-finder could have found him guilty of the lesser crime, failure to give the instruction is error. See *Fisher*, 304 Kan. at 258.

Voluntary manslaughter based on an imperfect self-defense is knowingly killing a person "upon an unreasonable but honest belief that circumstances existed that justified use of deadly force" for self-defense. K.S.A. 2017 Supp. 21-5404(a)(2). To justify the giving of an imperfect self-defense instruction, Verstraete was required to show that he had a sincere and honest belief that his use of force was necessary to defend himself and that a reasonable person presented with those same circumstances also would have believed self-defense was necessary. Generally, defending oneself is justifiable "when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force." K.S.A. 2017 Supp. 21-5222(a).

But the standard for justification is higher when a person is defending oneself against a law enforcement officer. Generally, self-defense is unavailable for purposes of physically resisting against an identified, uniformed law enforcement officer. *City of Wichita v. Cook*, 32 Kan. App. 2d 798, 801, 89 P.3d 934 (2004). A person may defend against a law enforcement officer who uses excessive force. *State v. Heiskell*, 8 Kan. App. 2d 667, 672, 666 P.2d 207 (1983). But an officer's use of force is not excessive, even if the officer used more than actually required, unless the amount of force was unreasonable or used wantonly and maliciously to injure the person. See *Dauffenbach v. City of Wichita*, 8 Kan. App. 2d 303, 308, 657 P.2d 582 (1983). Thus, to justify the giving of an imperfect self-defense instruction in this particular case, Verstraete is required to show that he subjectively believed the force he used was necessary to defend himself against an unreasonable amount of force from law enforcement officers and that

8

a reasonable person presented with those same circumstances also would have believed the force he used was necessary.

Although it is not required, evidence of a defendant's subjective belief would ordinarily come from a defendant's own testimony. See, e.g., *State v. Cosby*, 293 Kan. 121, 132, 262 P.3d 285 (2011); *Heiskell*, 8 Kan. App. 2d at 675. Verstraete did not testify. So this court must look at other indications of Verstraete's subjective belief in the record.

The evidence does not support that Verstraete had a subjective belief that he had to defend himself from the imminent use of excessive police force, even when viewed in the light most favorable to Verstraete. During the confrontation with Verstraete, the officers repeatedly asked Verstraete to drop his knife and axe handle but Verstraete stubbornly refused to comply with the many requests. Rather than obeying the officers' orders, Verstraete deliberately ignored the officers and continued to walk toward the apartment. The officers ordered Verstraete not to enter his apartment and warned him that if he did, he would be tased. Intentionally disregarding the officers' warning, Verstraete tried to enter his apartment and Sergeant Ferbert tased him, causing Verstraete to fall to the ground. Verstraete got up and swung the knife and axe handle at Ferbert, and Ferbert used his taser repeatedly to no avail. At this point, Ferbert ordered Wright to shoot. The first shot missed Verstraete but caused him to fall to the ground. Believing Verstraete was injured, the officers approached Verstraete to kick the weapons away from him and take him into custody. Rather than dropping his weapons or staying on the ground, Verstraete got up and rushed at Officer Wright, swinging his axe handle and yelling, "I'm going to fucking kill you." Wright began backing away from Verstraete.

Verstraete argues these facts readily establish that he subjectively believed the force he used against Officer Wright was necessary to defend himself against excessive force from Wright and Sergeant Ferbert. We disagree. As Verstraete rushed toward

9

Wright swinging his axe handle and threatening to kill him, Wright was backing away. Rushing an officer with weapons and threatening to kill the officer while the officer is retreating do not appear to be the actions of a person claiming self-defense.

Even if Verstraete subjectively believed the force he used against Officer Wright was necessary to defend himself against excessive force by law enforcement officers, we are not persuaded that an objectively reasonable person under the same circumstances would believe that the force used by the law enforcement officers in this case was excessive. First, Verstraete has failed to show that an objectively reasonable person in his position would believe Wright's first shot toward Verstraete (which hit the Gatorade bottle Verstraete was holding) was an unreasonable amount of force by a law enforcement officer under the circumstances. More important though is the fact that the use of lethal force by Wright was triggered by Verstraete's lethal attack on Sergeant Ferbert. An objectively reasonable person in this situation would not believe Wright used excessive force in discharging his gun when his partner's life was in danger. In fact, an objectively reasonable person likely would have avoided any physical confrontation by dropping his or her weapons upon the threat of being tased. Verstraete's stubborn refusals to comply with the orders of law enforcement coupled with his defiant attitude are inconsistent with a personal or objective belief that use of physical force was the only option in responding to law enforcement's actions.

In sum, there is no evidence from which we can conclude that Verstraete subjectively believed that he had to defend himself against the imminent use of excessive force or that an objectively reasonable person in Verstraete's position would have that belief. The district court did not err in failing to instruct the jury on attempted voluntary manslaughter based on imperfect self-defense. Because there was no error, we need not conduct a reversibility inquiry.

10

*Cumulative error*

Verstraete argues that the cumulative effect of the district court's errors was so prejudicial as to warrant reversal. But when there is no error, there can be no errors to contribute to cumulative error and there is no basis for reversal. See *State v. Love*, 305 Kan. 716, 737, 387 P.3d 820 (2012).

Affirmed.